IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEPHEN MIDDLEBROOKS :<br>:<br>:<br>    Plaintiff,  :<br>  v.  :<br>:<br>TEVA PHARMACEUTICALS  :<br>USA, INC.; TEVA PHARMACEUTICAL:<br>INDUSTRIES LIMITED  :<br>:<br>    Defendants.  :<br>_____ : | CIVIL ACTION NO. 17-0412 |

**PRETRIAL MEMORANDUM OF PLAINTIFF, STEPHEN MIDDLEBROOKS, PURSUANT TO LOCAL RULE OF CIVIL PROCEDURE 16.1**

Pursuant to L.R.Civ.P.16.1(c), the Court's August 8, 2018 Scheduling Order, and the Court's Policies and Procedures, Plaintiff, Stephen Middlebrooks, by and through his undersigned counsel, respectfully submits the following pretrial memorandum.

**I.  Brief Statement of the Nature of the Action Pursuant to L.R. 16.1(c)(1)**

Plaintiff (American national origin) was a fourteen (14) year employee of Defendants with a long record of excellent performance when he was terminated, at age fifty eight (58), in February 2016.

In around mid-2015, Plaintiff (and the group that he led) engaged in protected activity by complaining of discriminatory conduct, including that his Israeli supervisor, Nir Aharoni, was engaging in inappropriate conduct, such as asking about employees' dates of birth, and that Aharoni, the Israeli head of the group, and his Israeli direct reports, were treating American employees in a hostile manner. Shortly after Defendants' investigation into those complaints (which concluded that the Israeli employees engaged in inappropriate conduct, including asking about employees' ages), Plaintiff was given a negative performance review and, within just a few

days of receiving that review, he was placed on a Performance Improvement Plan ("PIP") (for the first time in his career with Defendants). Plaintiff then filed an internal complaint of discrimination (regarding national origin discrimination and age discrimination) and retaliation. Shortly thereafter, he filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

On February 10, 2016, Defendants told Plaintiff that they were extending his PIP through the end of the month; it was around that same time that Defendants made the decision to terminate Plaintiff's employment. Plaintiff was terminated on February 29, 2016; after almost fifteen (15) years, Plaintiff was given one hour to pack up his things, and escorted out of his office. He was replaced by a twenty one (21) years younger employee whom he had helped train.

Defendants' discriminatory conduct against Plaintiff based on his age and his national origin, and their retaliatory conduct against him based on his complaints about the same, violates the Age Discrimination in Employment Act, 29 U.S.C. §621, *et seq.* ("ADEA"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000, *et seq.* ("Title VII"), and the Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq.* ("PHRA").

This Court has jurisdiction over Plaintiff's Title VII claims pursuant to 42 U.S.C. §2000e-5 and 28 U.S.C. §1331; Plaintiff's ADEA claims pursuant to 29 U.S.C. §626(c) and 28 U.S.C. §1331; and, Plaintiff's PHRC claims pursuant to 28 U.S.C. §1367.

## II.     Brief Statement of the Facts of the Case Pursuant to L.R. 16.1(c)(2)

Plaintiff (American, born in July 1957) started working for Defendants in April 2001. He spent his entire career with Defendants in the Facilities Management function. Up until 2014, when he started reporting to Nir Aharoni (Israeli, born in May 1970), Plaintiff received

consistently good performance reviews and he was never disciplined for any performance-related issues.

In around late 2013, Defendants globalized the Facilities Management function and placed Aharoni (working out of Israel) in charge of the same. When Plaintiff and Aharoni toured Defendants' sites in the United States together at the commencement of this process, Aharoni asked Plaintiff his age and how long he planned to work at Defendants. Plaintiff continued in his position overseeing North American Facilities Management ("NAFM") working under Aharoni starting in around January 2014.

In January 2015, Aharoni gave Plaintiff a "Mostly Meets" rating on his 2014 performance review; it was the first time during Plaintiff's employment with Defendants that he ever got a rating lower than "Meets." In around March 2015, when equity awards were distributed to eligible (director-level) employees, Aharoni (who had discretion to award equity) told Plaintiff that, out of the three (3) employees in his group who were eligible to receive equity, Plaintiff at age fifty seven (57); Ray Duggan at age fifty seven (57); and, Troy Gaughler (age forty eight (48), only Gaughler would receive the award. When Duggan (57) asked Aharoni why he was not awarded equity, Aharoni told him that equity awards were "only for employees that will be with us for a long time."[1]

In around June 2015, Plaintiff and the group of employees that he led, made complaints regarding the discriminatory conduct in which Aharoni (and certain of his Israeli direct reports) engaged. This included repeatedly asking Plaintiff and his direct reports their ages and the ages of their reports; treating American employees less favorably then their counterparts in Israel and

---

[1] Although Duggan complained about the same to Defendants' Human Resources, the only response that he received, a couple weeks later, was that there was nothing that could be done.

Europe; and, acting in a hostile and condescending manner towards American employees.[2] These complaints resulted in Defendants' Human Resources conducting an internal investigation. Aharoni, who had never before had to deal with complaints involving his conduct or his direct reports, was upset with Plaintiff about the complaints and the resulting investigation. He told Plaintiff that "a good manager would have controlled his people and it never would have gotten this far."

The investigation concluded that there were complaints regarding, *inter alia*, repeated requests for information regarding age and "perceived discrimination due to ethnic bias," "disregard for Laws and statutes after being made aware of the impact," and, that there was a "[f]ear of retaliation for sharing." Aharoni was not disciplined, at all, in connection with the complaints or the investigation into the same. Neither were his Israeli direct reports who, according to the investigative report, engaged in inappropriate conduct, including asking questions about employees' ages.

Within about one (1) week of Defendants sending Aharoni the (condensed) investigative report (on October 14, 2015), he gave Plaintiff a negative mid-year performance review.[3] Plaintiff had sent his self-evaluation for his mid-year review to Aharoni in July; Aharoni did not respond to the same, or give Plaintiff any documentation regarding any (alleged) performance deficiencies, until mid-October 2015. On October 29, 2015, Defendants placed Plaintiff on a Performance Improvement Plan ("PIP") for the first time in his career with Defendants and involving a new set of requirements for Plaintiff and his team.[4]

On November 12, 2015, Plaintiff made an internal complaint regarding Defendants'

---

[2] Aharoni also made comments to Plaintiff and other employees that were derogatory towards Americans.
[3] Defendants' standard practice was for managers to give their employees mid-year reviews at mid-year (i.e., June or July) and to give employees who receive "Mostly Meets" ratings, as Plaintiff did in January 2015, mid-year review.
[4] Aharoni testified that he made the decision to place Plaintiff on the PIP around October 15, 2015.

4

discriminatory conduct based on age and national origin, and the retaliatory conduct to which he was being subjected based on his complaints about the same. He filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") shortly thereafter. Aharoni was angry at Plaintiff about the EEOC Charge. He told Plaintiff that it was the first time that anyone had made a complaint like that and that there were weeks that went by that he was too angry to talk to Plaintiff. Defendants did not investigate either Plaintiff's internal complaint or his EEOC Charge.

In December 2015, Plaintiff made multiple attempts to connect with Aharoni regarding his progress on the PIP, and to request written feedback regarding the same. Aharoni not only did not respond, but cancelled meetings with Plaintiff regarding the PIP. The first time that Aharoni even drafted written feedback regarding Plaintiff's progress on the PIP was in late January. The first time that Aharoni shared any written feedback with Plaintiff regarding the PIP was on February 10, 2016 when Aharoni advised Plaintiff that the PIP was being extended through the end of February 2016.[5]

Defendants terminated Plaintiff's employment on February 29, 2016. He was replaced by a twenty one (21) years younger employee whom he had helped train when he started in August 2015.

### III.  Summary of Damages Pursuant to L.R. 16.1(c)(3)

#### A.  Economic Loss Damages

Plaintiff has submitted an unrebutted expert report (attached hereto as Exhibit "A") setting forth his economic loss resulting from Defendants' discriminatory and retaliatory conduct. In his last full year of employment with Defendants, Plaintiff earned almost $300,000.

---

[5] Defendants made the decision to terminate Plaintiff's employment around this time.

He anticipated working (at Defendants) through age seventy (70). He was unemployed for about six (6) months after his termination. His expert report (attached) sets forth his estimated back pay loss ($341,665) and his front pay ($171,493 to $285,062); his total economic loss is estimated at $513,158 to $626,727.

### B. Pain and Suffering Damages

Plaintiff seeks compensation for the emotional distress that he has endured, and continues to suffer, as a result of Defendants' discriminatory and retaliatory treatment. This award is uncapped pursuant to the PHRA. At his deposition, Plaintiff testified that the emotional impact on him has been "huge."

### C. Punitive Damages

Under Title VII, Plaintiff is entitled to punitive damages (capped at $300,000).

### D. Liquidated Damages

Due to the willful nature of Defendants' conduct, Plaintiff's back pay losses will be doubled as liquidated damages under the ADEA, giving him $341,665 (as of the time of trial), pursuant to his estimated back pay set forth in his expert report (attached as Ex. "A").

### E. Attorneys' Fees and Costs

Plaintiff's attorneys' fees and costs currently exceed $250,000. He will seek all attorneys' fees and costs subsequent to a verdict in his favor.

### IV. Plaintiff's Fact Witnesses and Brief Statement of the Nature of their Expected Testimony

A. Plaintiff intends to call the following non-expert witnesses as to liability and anticipates that they will testify as follows:

a) Plaintiff, Stephen Middlebrooks

REDACTED

Plaintiff's testimony will include information regarding the allegations in his complaint, including his employment and performance history with Defendants; the discriminatory conduct to which he was subjected based on his national origin; the discriminatory conduct to which he was subjected based on his age; the retaliatory conduct to which he was subjected based on his complaints regarding discriminatory conduct.

    b)  Ellen Cicak
       Former Employee of Defendants
       REDACTED

Ms. Cicak's testimony will include information regarding the discriminatory conduct based on age and national origin in which Plaintiff's supervisor, Nir Aharoni (and other employees), engaged; Defendants' investigation regarding complaints of discriminatory conduct; Defendants' discriminatory and retaliatory conduct towards Plaintiff.
and, the performance of Plaintiff and their group.

    c)  Raymond Duggan
       Former Employee of Defendants
       REDACTED

Mr. Duggan's testimony will include information regarding the discriminatory conduct based on age and national origin in which Plaintiff's supervisor, Nir Aharoni (and other employees), engaged; Defendants' investigation regarding complaints of discriminatory conduct; and, the performance of Plaintiff and their group.

    d)  John Eppley
       Former Employee of Defendants

Mr. Eppley's testimony will include information regarding the discriminatory conduct based on age and national origin in which Plaintiff's supervisor, Nir Aharoni (and other employees), engaged; Defendants' investigation regarding complaints of discriminatory conduct; and, the performance of Plaintiff and their group.

    e)  Kristin Macone
       Former Employee of Defendants
       PA

Ms. Macone's testimony will include information regarding the discriminatory conduct based on age and national origin in which Plaintiff's supervisor, Nir Aharoni (and other employees), engaged; Defendants' investigation regarding complaints of discriminatory conduct; and, the performance of Plaintiff and their group.

      f)     Troy Gaugler
               Former Employee of Defendants

Mr. Gaugler's testimony will include information regarding the discriminatory conduct based on age and national origin in which Plaintiff's supervisor, Nir Aharoni (and other employees), engaged; Defendants' investigation regarding complaints of discriminatory conduct; and, the performance of Plaintiff and their group.

      g)     Herminia Rodriguez
               Former Employee of Defendants
               **REDACTED**

Ms. Rodriguez's testimony will include Defendants' Equal Employment Opportunity policies and procedures; Defendants' Human Resources process and procedures; Nir Aharoni's performance and employment with Defendants; Defendants' discriminatory and retaliatory conduct towards Plaintiff.

      h)     Jennifer Flaisher
               Former Employee of Defendants
               **REDACTED**

Ms. Flaisher's testimony will include Defendants' Equal Employment Opportunity policies and procedures; Defendants' Human Resources process and procedures; Nir Aharoni's performance and employment with Defendants; Defendants' discriminatory and retaliatory conduct towards Plaintiff.

      i)     Christopher Swartz
               Former Employee of Defendants

Mr. Swartz's testimony will include Defendants' Equal Employment Opportunity policies and procedures; Defendants' Human Resources process and procedures; Nir Aharoni's performance and employment with Defendants; Defendants' discriminatory and retaliatory conduct towards Plaintiff.

      j)     Gary Best
               Consultant for Defendants
               **REDACTED**

Mr. Best's testimony will include his experience as the external coach whom Defendants retained to work with Plaintiff; his observations resulting from his work with Plaintiff; and his conclusions resulting from

      k)      Rhonda Wilton
              Former Employee of Defendants
              Canada

Ms. Wilton's testimony will include information regarding the discriminatory conduct based on age and national origin in which Plaintiff's supervisor, Nir Aharoni (and other employees), engaged; Defendants' investigation regarding complaints of discriminatory conduct; and, the performance of Plaintiff and their group.

      l)      Scott Hoyt
              Former Employee of Defendants
              Minnesota

Mr. Hoyt's testimony will include information regarding the discriminatory conduct based on age and national origin in which Plaintiff's supervisor, Nir Aharoni (and other employees), engaged; Defendants' investigation regarding complaints of discriminatory conduct; and, the performance of Plaintiff and their group.

      B.     Plaintiff intends to call the following non-expert witnesses as to damages and anticipates that they will testify as follows:

      a)      Plaintiff, Stephen Middlebrooks
              REDACTED

Plaintiff's testimony will include the damages to him that have resulted from Defendants' discriminatory and retaliatory conduct, including her emotional distress.

      b)      Lilli Middlebrooks
              REDACTED

Ms. Middlebrooks is Plaintiff's wife. Her testimony will include information regarding the emotional and other damages that Plaintiff suffered as a result of Defendants' discriminatory and retaliatory conduct.

      C.     Defendants' Witnesses: Plaintiff does not yet know which witnesses Defendants will be calling at trial, but he objects to Defendants' October 8, 2018 addition to their Initial Disclosures of Megan Murray, Executive Recruiter at 2Msearch to testify "regarding the confidential and non-confidential searches conducted by 2Msearch for Plaintiff's replacement." Ms. Murray was not deposed during discovery and Defendants did not include her on their disclosures until October 8, 2018.

V.   **Expert Witnesses**

    a)    Andrew C. Verzilli
           411 North Broad Street
           Lansdale, PA 19446

Mr. Verzilli will testify regarding Plaintiff's economic loss. His expert disclosures are attached hereto as Exhibit "A."

VI.   **Exhibits**

### PLAINTIFF'S TRIAL EXHIBIT LIST

| EX. NO. | DATE | DESCRIPTION | BATES |
|---|---|---|---|
| TR. EX. P-1 | 01/01/11 | Coaching, Counseling and Corrective Action Policy | TEVA SM 218-220 |
| TR. EX. P-2 | 07/28/14 | E-mails between Mini Rodriguez and Ilanit Shtrouchler re "FM NA – HR topics" | TEVA SM 1093-1099 |
| TR. EX. P-3 | 08/20/14 | E-mails between Mini Rodriguez and SM re "Your Development Plan" | TEVA SM 1100-1102 |
| TR. EX. P-4 | Undated | Leadership & Development: Executive Coaching Form for SM | TEVA SM 350-351 |
| TR. EX. P-5 | 11/07/14 | Letter to SM promoting him to Sr. Director, Facility Management with a salary of $188,195.70 | TEVA SM 658-659 |
| TR. EX. P-6 | 12/31/14 | 2014 Performance Management Full Report for SM (overall evaluation: mostly meets) | TEVA SM 667-680 |
| TR. EX. P-7 | 02/02/15 | E-mails between Mini Rodriguez and Shannon Phillips re Additional Information Regarding Steve Middlebrooks | TEVA SM 1144-1149 |
| TR. EX. P-8 | 05/14/15 | E-mails between Mini Rodriguez, Gary Best and SM re Steve's coaching program | TEVA SM 346-348 |
| TR. EX. P-9 | 05/14/15 | E-mail from SM to Nir re "My coach- Gary Best" | TEVA SM 1298 |
| TR. EX. P-10 | Mid 2015 | Steve Middlebrooks Mid-year Evaluation | TEVA SM 1970-1978 |
| TR. EX. P-11 | 06/09/15 | E-mail from SM re Agenda for our staff meeting | TEVA SM 371-384 |
| TR. EX. P-12 | 06/11/15 | E-mails between Mini Rodriguez and Shannon Phillips re "following up-Steve Middlebrooks" | TEVA SM 1312-1314 |
| TR. EX. P-13 | 06/16/15 | E-mail from Mini Rodriguez to Nir "we owe Steve and his coach Gary Best a response." | TEVA SM 1316 |
| TR. EX. P-14 | 07/23/15 | E-mail from SM to Nir attaching Mid Year Review | TEVA SM 173-180 |
| TR. EX. P-15 | 07/31/15 | E-mails between Mini Rodriguez and Shannon Phillips re "Nir's lack of partnership in the process" | TEVA SM 1393-1396 |
| TR. EX. P-16 | 08/03/15 | Investigative Report | TEVA SM 245-276 |

| TR. EX. P-17 | 08/11/15 | E-mails between Mini Rodriguez, Tom McDonough and Pamela Daknis re Hostile Workplace Information | TEVA SM 1397-1402 |
|---|---|---|---|
| TR. EX. P-18 | 08/11/15 | E-mails between Jennifer Flaisher, Mini Rodriguez and Ilanit Shtrouchler re Hostile Workplace Information | TEVA SM 1404-1408 |
| TR. EX. P-19 | 08/13/15 | E-mail to Nir re "Hostile Workplace Information" | TEVA SM 1409-1412 |
| TR. EX. P-20 | 09/08/15 | E-mails between Jennifer Flaisher and Mini Rodriguez re "GFM Interview Questions" | TEVA SM 2489-2490 |
| TR. EX. P-21 | 09/25/15 | E-mail from Mini Rodriguez to Jennifer Flaisher re "GFM Investigation Update with Nir" | TEVA SM 2494 |
| TR. EX. P-22 | 09/30/15 | E-mail from Mini Rodriguez to Ilanit Shtouchler re "Urgent: GFM issues" | TEVA SM 2497-2498 |
| TR. EX. P-23 | 10/05/15 | E-mails between Jennifer Flaisher, Mini Rodriguez and Ilanit Shtrouchler re "FYI- conversation with Nir" | TEVA 354-355 |
| TR. EX. P-24 | 10/14/15 | E-mail to Nir re "GFM Investigation Summary" | TEVA SM 1487; 687-693 |
| TR. EX. P-25 | 10/15/15 | Handwritten Notes re Final Investigation Summary | TEVA SM 385-387 |
| TR. EX. P-26 | 10/16/15 | Handwritten Notes re GFM Investigation Debrief | TEVA SM 388-390 |
| TR. EX. P-27 | 10/16/15 | E-mail from Jennifer Flaisher to Chris Swartz re Final Reports | TEVA SM 1489-1493 |
| TR. EX. P-28 | 10/16/15 | E-mails between Mini Rodriguez and Jennifer Flaisher re GFM Investigation call/ Steve PIP update | TEVA SM 1511-1516 |
| TR. EX. P-29 | 10/17/15 | E-mail from Mini Rodriguez to Ilanit Shtrouchler re "Updated Comms/GFM" | TEVA SM 1517-1519 |
| TR. EX. P-30 | 10/19/15 | E-mail from Mini Rodriguez to Nir attaching "Talking Points" | TEVA SM 324-326 |
| TR. EX. P-31 | 10/28/15 | Handwritten Notes re Nir meeting in Canada | TEVA SM 391-392 |
| TR. EX. P-32 | 10/29/15 | Handwritten Notes re Steve PIP | TEVA SM 393-394 |
| TR. EX. P-33 | 10/29/15 | Performance Improvement Plan for SM | TEVA SM 703-705 |
| TR. EX. P-34 | 11/02/15 | E-mails between Jennifer Flaisher and Mini Rodriguez re Update on Steve PIP | TEVA SM 1630-1637 |
| TR. EX. P-35 | 11/13/15 | E-mails between Lesley Billow and Jennifer Flaisher re "Formal response to the PIP document dated 10/29/2015" | TEVA SM 1648-1650 |
| TR. EX. P-36 | 11/25/15 | EEOC Charge | TEVA SM 587-591 |
| TR. EX. P-37 | 11/26/15 | E-mail from SM to Nir, Flaisher and Rodriguez attaching courtesy copy of EEOC charge | TEVA SM 1725-1726 |
| TR. EX. P-38 | 12/01/15 | E-mails between Jennifer Flaisher and Christopher Swartz re "follow up on Steve & GFM" | TEVA SM 1738-1740 |
| TR. EX. P-39 | 12/03/15 | E-mail from Flaisher to Ilanit re "Charge of Discrimination – URGEN CALLL | TEVA SM 1757-1761 |

11

| TR. EX. P-40 | 12/03/15 | E-mail from Jennifer Flaisher to Nir Aharoni re "Quick Update" | TEVA SM 395-396 |
|---|---|---|---|
| TR. EX. P-41 | 12/13/15 | E-mail from SM to Nir attaching third PIP scorecard summary report | TEVA SM 1795-1800 |
| TR. EX. P-42 | 12/15/15 | E-mail from SM to Nir re "PIP Review Meeting" | TEVA SM 1804-1805 |
| TR. EX. P-43 | 12/16/15 | E-mail from SM to Nir requesting written feedback | TEVA SM 1811-1814 |
| TR. EX. P-44 | 01/14/16 | E-mail from Jennifer Flaisher re Alternative Roles for S. Middlebrooks Outside of GFM | TEVA SM 397-401 |
| TR. EX. P-45 | 01/23/16 | E-mail from Nir attaching Steve Middlebrooks PIP Summary V1 | TEVA SM 1845-1850 |
| TR. EX. P-46 | 02/10/16 | Steve Middlebrooks PIP summary | TEVA SM 713-718 |
| TR. EX. P-47 | 02/11/16 | E-mail from Nir re "Global Mindset Workshop" | TEVA SM 334-335 |
| TR. EX. P-48 | 02/16/16 | E-mail from Ilanit Shtrouchler "we plan to separate from Steve by the end of Feb" | TEVA SM 418-419 |
| TR. EX. P-49 | 02/20/16 | E-mails between Nir and Christopher Swartz attaching PIP Summary for SM | TEVA SM 1875-1877 |
| TR. EX. P-50 | 02/20/16 | E-mail from Chris Swartz forwarding PIP update to Larry Rappoport and Thomas McDonough | TEVA SM 420-422 |
| TR. EX. P-51 | 02/22/16 | E-mails between Nir and Chris Swartz re Steve PIP summary | TEVA SM 1878-1879 |
| TR. EX. P-52 | 02/25/16 | E-mail from Christopher Swartz to Nir and Illanit attaching revised communication plan | TEVA SM 1882-1890 |
| TR. EX. P-53 | 02/29/16 | E-mails re "Stephen Middlebrooks" | TEVA SM 1895-1900 |
| TR. EX. P-54 | 02/29/16 | E-mails between Jennifer Flaisher and Mark Sabag re "Stephen Middlebrooks" | TEVA SM 1901-1906 |
| TR. EX. P-55 | 03/03/16 | E-mails between Jennifer Flaisher and Christopher Swartz re "Communication plan for Steve" | TEVA SM 1922-1933 |
| TR. EX. P-56 | 06/01/16 | E-mail from Drew Lewis to Riki Mozes and Chris Swartz enc Senior Director search summary recap | TEVA SM 557-572 |
| TR. EX. P-57 | 11/10/17 | Defts' First Amended Answers to Pltf's ROGs – set 1 | Not Bates |
| TR. EX. P-58 | Undated | GFM Org Chart | TEVA SM 406 |
| TR. EX. P-59 | | FM NA Organization Structure Org Chart | TEVA SM 2380 |
| TR. EX. P-60 | | FM NA Organization Structure Org Chart | TEVA SM 1932 |
| TR. EX. P-61 | | GFM Organizational Structure Chart | TEVA SM 1933 |
| TR. EX. P-62 | Undated | Memo from Gary Best to SM, Mini Rodriguez and Shannon Phillips re Final Report, Coaching Program for Steve Middlebrooks | TEVA SM 343-345 |

| TR. EX. P-63 | 09/08/16 | Respondents' Position Statement | TEVA SM 629-656 |
| TR. EX. P-64 | 02/12/18 | Teva 2017 10-k annual report | Not Bates |
| TR. EX. P-65 | | Various Demonstrative Exhibits | |

Plaintiff reserves the right to enlarge any of the exhibits listed above and to use/enlarge any exhibit listed by Defendants in this litigation. Plaintiff also reserves the right to use at trial any portion of any deposition taken in this matter.

## VII. Objections to Defendant's Exhibits

Plaintiff is currently reviewing Defendants' list of trial exhibits, and reserves the right to object to the admissibility of any of Defendants' exhibits, including on the basis of authenticity. He is not yet able to determine the same, as he does not know which witnesses Defendants will be calling at trial (and   Plaintiff is currently reviewing Defendants' Trial Exhibit List. As he does not yet know which witnesses Defendants will be calling at trial, he is not yet able to determine whether he is contesting the authenticity and admissibility of the exhibits.

## IX. Stipulations of Counsel[6]

1. Plaintiff was fifty eight (58) years old at the time of his termination.

2. Plaintiff's national origin is American.

3. In his capacity as Senior Director of North American Facilities Management, Plaintiff oversaw a staff of about seventy (70) employees, and he managed functions that included, but were not limited to, security services; engineering services; energy management; maintenance; vendor management; metrology; and, space planning and management.

4. As Senior Director of North American Facilities Management, Plaintiff reported directly to Nir Aharoni (Israeli), the Global Senior Director of Facilities for Teva Pharmaceuticals Industries, LTD. Aharoni was based in Israel at Teva Pharmaceuticals Industries, Ltd.'s global headquarters.

5. Nir Aharoni was born in May 1970.

---

[6] These stipulations are Defendants' admissions in their Answer to Plaintiff's Second Amended Complaint.

6. Members of Aharoni's team asked about the ages of employees.

7. Plaintiff raised that certain team members had been asked about certain employees' ages and that this might not be appropriate to ask in the United States.

8. Plaintiff complained to Defendants' Human Resources that Aharoni's team members were requesting information regarding the ages of his direct reports, and that they stated that they make employment decisions based on age. Human Resources told Plaintiff that they would speak with Aharoni and his team regarding the same.

9. In or about January 2015, Plaintiff received his annual performance review rating, on which he received an overall rating of "2," which was "mostly meets" expectations. This was the first performance review that Plaintiff received under Aharoni's supervision and the first time that he received a rating below that of "meets expectations."

10. Plaintiff was told that the investigation conducted by Human Resources resulted in a finding that there was no discriminatory bias, but "cultural and sensitivity training," counseling for certain of Aharoni's Israeli team members, and follow-up by Human Resources, was recommended.

11. Plaintiff was placed on a Performance Improvement Plan ("PIP") on October 29, 2015. It was the first time that he was placed on a PIP.

12. Plaintiff complained that the PIP was unjustified, as he had met his objectives from that year, and that Defendants had placed him on the PIP because of his age, his national origin, and his complaints of discrimination.

13. Plaintiff filed a Charge of Discrimination with the EEOC on November 25, 2015.

14. Plaintiff sent a copy of his EEOC Charge to Teva Pharmaceuticals USA, Inc. and Aharoni.

15. On or about January 4, 2016, Plaintiff met with Jennifer Flaisher, Vice President, Human Resources, regarding his complaints.

16. On or about January 15, 2016, Aharoni told Plaintiff that his PIP would be extended through the end of February 2016.

17. Defendants terminated Plaintiff's employment on February 29, 2016. Aharoni told Plaintiff that the reason for the same was his performance.

## IX. **Designation of Deposition Testimony**

At this time, Plaintiff is not yet aware of which witnesses Defendants are producing at trial and, as such, is unable to determine which depositions will be read at trial. He believes that

portions of the depositions of Nir Aharoni; Ilanit Shtrouchler; and, Leander Jones will need to be read at trial[7]. Plaintiff reserves the right to introduce as part of his case-in-chief deposition testimony from any witness in this matter, pursuant to the Federal Rules of Civil Procedure.

## X.    Days of Trial Pursuant to L.R. 16.1(c)(6)

Plaintiff estimates that the number of days required for trial is four (4) days.

## XI.   Special Comments Pursuant to L.R. 16.1(c)(7)

None at this time. Plaintiff will assess any Motions *in Limine* filed by Defendants (due on October 17th) to determine whether, in those filings, there are any significant legal issues raised that should be addressed.

Respectfully submitted,

**CONSOLE MATTIACCI LAW**

Dated: October 9, 2018    BY:   /s/ Caren N. Gurmankin
Laura C. Mattiacci, Esquire
Caren N. Gurmankin, Esquire
1525 Locust Street, 9th Floor
Philadelphia, PA 19102
215-545-7676

---

[7] Aharoni and Shtrouchler are the former employees of Defendants in Israel who are the subject of the Court's September 27, 2018 Order; their depositions have not yet been noticed/scheduled. Jones is an employee of Defendants who was deposed in this matter and who resides outside of the parties' subpoena power.

# Exhibit "A"

# REDACTED

(Based on the inclusion of confidential information. Plaintiff will submit the unredacted report to the Court).