IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| STEPHEN MIDDLEBROOKS | : | |
| | : | CIVIL ACTION NO. 17-0412 |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| TEVA PHARMACEUTICALS | : | |
| USA, INC.; TEVA PHARMACEUTICAL | : | |
| INDUSTRIES LIMITED | : | |
| | : | |
| Defendants. | : | |
| | : | |

## PLAINTIFF'S PROPOSED JURY INSTRUCTIONS

Pursuant to the Court's Scheduling Order, Mr. Middlebrooks submits the following

points for charge as to Liability and Damages.  Mr. Middlebrooks reserves the right to make

changes to and supplement these instructions based upon ruling by the Court and/or any errors

and/or omissions in the submissions.

CONSOLE MATTIACCI LAW, LLC

By:    */s/ Laura C. Mattiacci*
Laura C. Mattiacci, Esq.
Caren N. Gurmankin, Esq.
Console Mattiacci Law, LLC
1525 Locust Street, 9th Floor
Philadelphia, PA 19102
215-545-7676

Attorneys for Plaintiff

## INDEX OF PLAINTIFF'S PROPOSED JURY INSTRUCTIONS

| NUMBER | TITLE | MODEL NUMBER | PAGE |
|---|---|---|---|
| 1 | Title VII Introductory Instruction | 5.0 | 3 |
| 2 | Elements of a Title VII Claim — Mixed-Motive | 5.1.1 | 4 |
| 3 | Elements of a Title VII Claim —Pretext | 5.1.2 | 6 |
| 4 | Elements of a Title VII Claim — Harassment — Hostile Work Environment — Tangible Employment Action | 5.1.4 | 8 |
| 5 | Elements of a Title VII Claim — Retaliation | 5.1.7 | 9 |
| 6 | Title VII Definitions — Hostile or Abusive Work Environment | 5.2.1 | 11 |
| 7 | Title VII Damages - Compensatory Damages — General Instruction | 5.4.1 | 13 |
| 8 | Title VII Damages - Punitive Damages | 5.4.2 | 15 |
| 9 | Title VII Damages - Back Pay — For Advisory or Stipulated Jury | 5.4.3 | 17 |
| 10 | Title VII Damages - Front Pay — For Advisory or Stipulated Jury | 5.4.4 | 20 |
| 11 | ADEA Introductory Instruction | 8.0 | 21 |
| 12 | Elements of an ADEA Claim - Disparate Treatment | 8.1.1 | 22 |
| 13 | Elements of an ADEA Claim - Harassment — Hostile Work Environment — Tangible Employment Action | 8.1.2 | 24 |
| 14 | Elements of an ADEA Claim - Retaliation | 8.1.5 | 25 |
| 15 | ADEA Definitions - Hostile or Abusive Work Environment | 8.2.1 | 26 |
| 16 | ADEA Damages - General Compensatory Damages | 8.4.1 | 28 |
| 17 | ADEA Damages - Back Pay | 8.4.2 | 29 |
| 18 | ADEA Damages - Liquidated Damages | 8.4.3 | 31 |
| 19 | ADEA Damages - Front Pay | 8.4.4 | 32 |

**Jury Instruction #1:**
**<u>Title VII Introductory Instruction</u>**
**(Third Cir. Model 5.0)**

In this case the Mr. Middlebrooks makes a claim under Title VII, a Federal Civil Rights statute that prohibits employers from discriminating against an employee [prospective employee] in the terms and conditions of employment because of the employee's race, color, religion, sex, or national origin.

More specifically, Mr. Middlebrooks claims that he was <u>subject to a hostile work environment, wrongfully given a poor performance review, placed on a PIP (Performance Improvement Plan) and terminated</u> by Teva because Mr. Middlebrooks <u>is an American and in retaliation for his complaints regarding the same.</u>

Teva denies that Mr. Middlebrooks was discriminated or retaliated against in any way. Further, Teva asserts that [describe any affirmative defenses].

I will now instruct you more fully on the issues you must address in this case.

**Jury Instruction #2:**
**Elements of a Title VII Claim – Disparate Treatment – Mixed-Motive**
**(Third Cir. Model 5.1.1)**

In this case Mr. Middlebrooks is alleging that Teva <u>wrongfully gave him a poor performance review, placed him on a PIP (Performance Improvement Plan) and terminated</u> him. In order for Mr. Middlebrooks to recover on this discrimination claim against Teva, Mr. Middlebrooks must prove that Teva intentionally discriminated against Mr. Middlebrooks. This means that Mr. Middlebrooks must prove that his <u>national origin, specifically, being an American,</u> was a motivating factor in Teva decision to <u>wrongfully give him a poor performance review, place him on a PIP (Performance Improvement Plan) and/or terminate</u> Mr. Middlebrooks.

To prevail on this claim, Mr. Middlebrooks must prove both of the following by a preponderance of the evidence:

First: Teva ~~[failed to hire Mr. Middlebrooks] [failed to renew Mr. Middlebrooks' employment arrangement] [failed to promote Mr. Middlebrooks] [demoted Mr. Middlebrooks]~~ gave Mr. Middlebrooks a poor performance review, placed him on a PIP, and/or terminated him ~~[constructively discharged Mr. Middlebrooks]~~ [or otherwise discriminated against Mr. Middlebrooks in a serious and tangible way with respect to Mr. Middlebrooks' compensation, terms, conditions, or privileges of employment][1]; and

Second: Mr. Middlebrooks' <u>protected status as an American</u> was a motivating factor in Teva's decisions.

Although Mr. Middlebrooks must prove that Teva acted with the intent to discriminate, Mr. Middlebrooks is not required to prove that Teva acted with the particular intent to violate Mr. Middlebrooks' federal civil rights.

In showing that Mr. Middlebrooks' American national origin was a motivating factor for Teva's actions, Mr. Middlebrooks is not required to prove that his being an American was the sole motivation or even the primary motivation for Teva's decisions. Mr. Middlebrooks need only prove that his being an American played a motivating part in Teva's decisions even though other factors may also have motivated Teva.

As used in this instruction, Mr. Middlebrooks' American national origin was a "motivating factor" if his being an American played a part or played a role in Teva' decisions to give him a poor performance review, placed him on a PIP, and/or terminate him.

**[For use where Teva sets forth a "same decision" affirmative defense:[2]**

If you find that Teva's treatment of Mr. Middlebrooks was motivated by both discriminatory and lawful reasons, you must decide whether Mr. Middlebrooks is entitled to

---

[1] Please see the Comment for discussion of the last item in this list of alternatives.

[2] The Committee uses the term "affirmative defense" to refer to the burden of proof, and takes no position on the burden of pleading the same-decision defense.

4

damages. Mr. Middlebrooks is not entitled to damages if Teva proves by a preponderance of the evidence that  Teva would have treated Mr. Middlebrooks the same even if Mr. Middlebrooks' [protected class]  had played no role in the employment decision.]

**Jury Instruction #3:**
**Elements of a Title VII Claim – Disparate Treatment – Pretext**
**(Third Cir. Model 5.1.2)**

~~In this case Mr. Middlebrooks is alleging that Teva [describe alleged disparate treatment] Mr. Middlebrooks. In order for Mr. Middlebrooks to recover on this discrimination claim against Teva, Mr. Middlebrooks must prove that Teva intentionally discriminated against Mr. Middlebrooks. This means that Mr. Middlebrooks must prove that [his/her] [protected status]~~ Another way that Mr. Middlebrooks can succeed on his claim is by proving that his American national origin was a determinative factor in Teva' decision to terminate him.

To prevail on this claim, Mr. Middlebrooks must prove both of the following by a preponderance of the evidence:

First: Teva ~~[failed to hire Mr. Middlebrooks] [failed to renew Mr. Middlebrooks' employment arrangement] [failed to promote Mr. Middlebrooks] [demoted Mr. Middlebrooks]~~ gave Mr. Middlebrooks a poor performance review, placed him on a PIP (Performance Improvement Plan), and/or terminated him [~~constructively discharged Mr. Middlebrooks]~~ [or otherwise discriminated against Mr. Middlebrooks in a serious and tangible way with respect to Mr. Middlebrooks' compensation, terms, conditions, or privileges of employment][3]; and

Second: Mr. Middlebrooks' American national origin was a determinative factor in Teva decision.

Although Mr. Middlebrooks must prove that Teva acted with the intent to discriminate, Mr. Middlebrooks is not required to prove that Teva acted with the particular intent to violate Mr. Middlebrooks' federal civil rights. Moreover, Mr. Middlebrooks is not required to produce direct evidence of intent, such as statements admitting discrimination. Intentional discrimination may be inferred from the existence of other facts.

You should weigh all the evidence received in the case in deciding whether Teva intentionally discriminated against Mr. Middlebrooks. ~~[For example, you have been shown statistics in this case. Statistics are one form of evidence that you may consider when deciding whether a Teva intentionally discriminated against a Mr. Middlebrooks. You should evaluate statistical evidence along with all the other evidence.]~~

Teva has given a nondiscriminatory reason for its decision to give him a poor performance review, place him on a PIP (Performance Improvement Plan) and terminate him. If you believe Teva's stated reasons and if you find that the these actions would have occurred because of Teva's stated reasons regardless of Mr. Middlebrooks' American national origin, then you must find for Teva. If you disbelieve Teva's stated reason for its conduct, then you may, but need not, find that Mr. Middlebrooks has proved intentional discrimination. In determining whether Teva stated reason for its actions was a pretext, or excuse, for discrimination, you may not question Teva's business judgment, unless you find it was motivated by discrimination. You cannot find intentional

---

[3] Please see the Comment for discussion of the last item in this list of alternatives.

6

discrimination simply because you disagree with the business judgment of Teva or believe it is harsh or unreasonable. ~~You are not to consider Teva wisdom.~~ However, you may consider whether Mr. Middlebrooks has proven that Teva's reasons are merely a cover-up for discrimination.

Ultimately, you must decide whether Mr. Middlebrooks has proven that his being a American was a determinative factor in Teva' decision to terminate Mr. Middlebrooks. "Determinative factor" means that if not for Mr. Middlebrooks being American, the termination would not have occurred.

**Jury Instruction #4:**
**Elements of a Title VII Claim – Harassment – Hostile Work Environment –**
**Tangible Employment Action**
**(Third Cir. Model 5.1.4)**

Mr. Middlebrooks claims that he was subjected to harassment by <u>members of Teva's management</u> and that this harassment was motivated by Mr. Middlebrooks' <u>being an American and his complaints about the same</u>.

Teva is liable for the actions of <u>management</u> in Mr. Middlebrooks' claim of harassment if Mr. Middlebrooks proves all of the following elements by a preponderance of the evidence:

First: Mr. Middlebrooks was <u>subjected to a hostile work environment</u> [describe alleged conduct or conditions giving rise to Mr. Middlebrooks' claim] by <u>Teva management</u> [names].

Second: [Names] <u>Teva's management</u>'s conduct was not welcomed by Mr. Middlebrooks.

Third: [Names] <u>Teva management's</u> conduct was motivated by the fact that Mr. Middlebrooks is <u>an American and/or complained about discrimination</u> [membership in a protected class].

Fourth: The conduct was so severe or pervasive that a reasonable person in Mr. Middlebrooks' position would find Mr. Middlebrooks' work environment to be hostile or abusive. This element requires you to look at the evidence from the point of view of a reasonable [member of Mr. Middlebrooks' protected class] reaction to Mr. Middlebrooks' work environment.

Fifth: Mr. Middlebrooks believed [his/her] work environment to be hostile or abusive as a result of [names] conduct.

Sixth: Mr. Middlebrooks suffered an adverse "tangible employment action" as a result of the hostile work environment; a tangible employment action is defined as a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.

**[For use when the alleged harassment is by non-supervisory employees:**

Seventh: Management level employees knew, or should have known, of the abusive conduct. Management level employees should have known of the abusive conduct if 1) an employee provided management level personnel with enough information to raise a probability of [protected class] harassment in the mind of a reasonable employer, or if 2) the harassment was so pervasive and open that a reasonable employer would have had to be aware of it.]

**Jury Instruction #5:**
**Elements of a Title VII Claim – Retaliation**
**(Third Cir. Model 5.1.7)**

Mr. Middlebrooks claims that Teva discriminated against [him/~~her~~] because of Mr. Middlebrooks' complaints about national origin discrimination, specifically, being an American. [~~describe protected activity~~].[4]

To prevail on this claim, Mr. Middlebrooks must prove all of the following by a preponderance of the evidence:

First: ~~Mr. Middlebrooks [describe activity protected by Title VII].~~ Teva [~~failed to hire Mr. Middlebrooks] [failed to renew Mr. Middlebrooks' employment arrangement] [failed to promote Mr. Middlebrooks] [demoted Mr. Middlebrooks]~~ gave Mr. Middlebrooks a poor performance review, placed him on a PIP (Performance Improvement Plan), and/or terminated him [~~constructively discharged Mr. Middlebrooks]~~ [or otherwise discriminated against Mr. Middlebrooks in a serious and tangible way with respect to Mr. Middlebrooks' compensation, terms, conditions, or privileges of employment][5]; and

Second: ~~Mr. Middlebrooks was subjected to a materially adverse action at the time, or after, the protected conduct took place.~~ Mr. Middlebrooks' complaints about American national origin discrimination was a determinative factor in Teva decision.

Third: There was a causal connection between [~~describe challenged activity~~ Teva's wrongfully giving Mr. Middlebrooks a poor performance review, placing him on a PIP (Performance Improvement Plan) and/or terminating him] and Mr. Middlebrooks' [~~describe protected activity~~] complaints about national origin discrimination, specifically, being an American.

Concerning the first element, Mr. Middlebrooks need not prove the merits of [his/~~her~~] [~~describe Mr. Middlebrooks' activity~~ national origin, specifically, being an American], but only

---

[4] ~~Instruction 5.1.7 will often be used in cases in which the same employee engaged in the protected activity and directly suffered the retaliation. As noted in the Comment, Title VII also bars retaliation against another employee if the circumstances are such that the retaliation against that employee might well dissuade a reasonable worker from engaging in protected activity. *See Thompson v. North Am. Stainless, LP*, 131 S. Ct. 863, 868 (2011). In cases in which the Mr. Middlebrooks is not the person who engaged in protected activity, the instruction should be modified appropriately. Among such changes, the following language could be added to the paragraph that explains the second element: "That is to say, you must decide if any actions Teva took against [Mr. Middlebrooks] might well discourage a reasonable worker in [third party's] position from [describe protected activity]. You must decide that question based on the circumstances of the case. [To take two examples, firing a close family member will almost always meet that test, but inflicting less serious harm on a mere acquaintance will almost never do so.]"~~

[5] Please see the Comment for discussion of the last item in this list of alternatives.

that he was acting under a reasonable,[6] good faith belief that Mr. ~~Middlebrooks' [or someone else's]~~ right to be free from discrimination on the basis of [national origin, specifically, being an American] was violated.

Concerning the second element, the term "materially adverse" means that Mr. Middlebrooks must show [~~describe alleged retaliatory activity~~that Teva wrongfully giving Mr. Middlebrooks a poor performance review, placing him on a PIP (Performance Improvement Plan) and/or terminating him]] was serious enough that it well might have discouraged a reasonable worker from [~~describe protected activity~~ complaining about discrimination based on American national origin]. ~~[The activity need not be related to the workplace or to Mr. Middlebrooks' employment.]~~

Concerning the third element, that of causal connection, that connection may be shown in many ways. For example, you may or may not find that there is a sufficient connection through timing, that is [~~employer's~~] Teva's action followed shortly after [~~employer~~] Teva became aware of Mr. Middlebrooks' [~~describe activity~~] complaining about discrimination based on national origin as an American. Causation is, however, not necessarily ruled out by a more extended passage of time. Causation may or may not be proven by antagonism shown toward Mr. Middlebrooks or a change in demeanor toward Mr. Middlebrooks.

Ultimately, you must decide whether Mr. Middlebrooks' [~~protected activity~~] complaining about discrimination based on national origin as an American had a determinative effect on [~~describe alleged retaliatory activity~~] Teva wrongfully giving Mr. Middlebrooks a poor performance review, placing him on a PIP (Performance Improvement Plan) and/or terminating him. "Determinative effect" means that if not for Mr. Middlebrooks' complaints about discrimination based on [~~protected activity~~] national origin, [~~describe alleged retaliatory activity~~] Teva wrongfully giving Mr. Middlebrooks a poor performance review, placing him on a PIP (Performance Improvement Plan) and/or terminating him would not have occurred.

---

[6] See the Comment for a discussion of the allocation of responsibility for determining the reasonableness of the Mr. Middlebrooks' belief.

**Jury Instruction #6:**
**Title VII Definition – Hostile or Abusive Work Environment**
**(Third Cir. Model 5.2.1)**

In determining whether a work environment is "hostile" you must look at all of the circumstances, which may include:

- The total physical environment of Mr. Middlebrooks' work area.

- The degree and type of language and insult that filled the environment before and after Mr. Middlebrooks arrived.

- The reasonable expectations of Mr. Middlebrooks upon entering the environment.

- The frequency of the offensive conduct.

- The severity of the conduct.

- The effect of the working environment on Mr. Middlebrooks' mental and emotional well-being.

- Whether the conduct was unwelcome, that is, conduct Mr. Middlebrooks regarded as unwanted or unpleasant.

- Whether the conduct was pervasive.

- Whether the conduct was directed toward Mr. Middlebrooks.

- Whether the conduct was physically threatening or humiliating.

- Whether the conduct was merely a tasteless remark.

- Whether the conduct unreasonably interfered with Mr. Middlebrooks' work performance.

Conduct that amounts only to ordinary socializing in the workplace, such as occasional horseplay, occasional use of abusive language, tasteless jokes, and occasional teasing, does not constitute an abusive or hostile work environment. A hostile work environment can be found only if there is extreme conduct amounting to a material change in the terms and conditions of employment. Moreover, isolated incidents, unless extremely serious, will not amount to a hostile work environment.

It is not enough that the work environment was generally harsh, unfriendly, unpleasant, crude or vulgar to all employees. In order to find a hostile work environment, you must find that Mr. Middlebrooks was harassed because of [Mr. Middlebrooks' membership in a protected class]. The harassing conduct may, but need not be [sexual/racial, etc.] in nature. Rather, its defining characteristic is that the harassment complained of is linked to the victim's [protected status]. The key question is whether Mr. Middlebrooks, as a [member of protected class], was subjected to harsh employment conditions to which [those outside the protected class] were not.

It is important to understand that, in determining whether a hostile work environment existed at the [employer's workplace] you must consider the evidence from the perspective of a reasonable [member of protected class] in the same position. That is, you must determine whether a reasonable [member of protected class] would have been offended or harmed by the conduct in question. You must evaluate the total circumstances and determine whether the alleged harassing behavior could be objectively classified as the kind of behavior that would seriously affect the psychological or emotional well-being of a reasonable [member of protected class]. The reasonable [member of protected class] is simply one of normal sensitivity and emotional make-up.

**Jury Instruction #7:**
**<u>Title VII Definition – Compensatory Damages – General Instructions</u>**
**(Third Cir. Model 5.4.1)**

I am now going to instruct you on damages.  Just because I am instructing you on how to award damages does not mean that I have any opinion on whether or not Teva should be held liable.

If you find by a preponderance of the evidence that Teva intentionally discriminated against Mr. Middlebrooks by [~~describe conduct~~] subjecting him to a hostile work environment, <u>wrongfully giving Mr. Middlebrooks a poor performance review, placing him on a PIP (Performance Improvement Plan) and/or terminating him</u>, then you must consider the issue of compensatory damages.  You must award Mr. Middlebrooks an amount that will fairly compensate [him/~~her~~] for any injury he actually sustained as a result of Teva's conduct.  The damages that you award must be fair compensation, no more and no less.  The award of compensatory damages is meant to put Mr. Middlebrooks in the position he would have occupied if the discrimination had not occurred. Mr. Middlebrooks has the burden of proving damages by a preponderance of the evidence.

Mr. Middlebrooks must show that the injury would not have occurred without Teva's acts [or omission]. Mr. Middlebrooks must also show that Teva's acts [or omission] played a substantial part in bringing about the injury, and that the injury was either a direct result or a reasonably probable consequence of Teva act's [or omission]. This test — a substantial part in bringing about the injury — is to be distinguished from the test you must employ in determining whether Teva's actions [or omissions] were motivated by discrimination. In other words, even assuming that Teva's actions [or omissions] were motivated by discrimination, Mr. Middlebrooks is not entitled to damages for an injury unless Teva's discriminatory actions [or omissions] actually played a substantial part in bringing about that injury.

[There can be more than one cause of an injury.  To find that Teva's act [or omission] caused Mr. Middlebrooks' injury, you need not find that Teva act [or omission] was the nearest cause, either in time or space. However, if Mr. Middlebrooks' injury was caused by a later, independent event that intervened between Teva's act [or omission] and Mr. Middlebrooks' injury, Teva is not liable unless the injury was reasonably foreseeable by Teva.]

In determining the amount of any damages that you decide to award, you should be guided by common sense. You must use sound judgment in fixing an award of damages, drawing reasonable inferences from the facts in evidence. You may not award damages based on sympathy, speculation, or guesswork.

You may award damages for any pain, suffering, inconvenience, mental anguish, or loss of enjoyment of life that Mr. Middlebrooks experienced as a consequence of Teva's [allegedly unlawful act or omission]. No evidence of the monetary value of such intangible things as pain and suffering has been, or need be, introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Any award you make should be fair in light of the evidence presented at the trial.

I instruct you that in awarding compensatory damages, you are not to award damages for

the amount of wages that Mr. Middlebrooks would have earned, either in the past or in the future, if he had continued in employment with Teva. These elements of recovery of wages that Mr. Middlebrooks would have received from Teva are called "back pay" and "front pay". [Under the applicable law, the determination of "back pay" and "front pay" is for the court.] ["Back pay" and "front pay" are to be awarded separately under instructions that I will soon give you, and any amounts for "back pay" and "front pay" are to be entered separately on the verdict form.]

You may award damages for monetary losses that Mr. Middlebrooks may suffer in the future as a result of Teva's [allegedly unlawful act or omission]. [For example, you may award damages for loss of earnings resulting from any harm to Mr. Middlebrooks' reputation that was suffered as a result of Teva's [allegedly unlawful act or omission]. Where a victim of discrimination has been terminated by an employer, and has sued that employer for discrimination, he may find it more difficult to be employed in the future, or may have to take a job that pays less than if the discrimination had not occurred. That element of damages is distinct from the amount of wages Mr. Middlebrooks would have earned in the future from Teva if he had retained the job.]

As I instructed you previously, Mr. Middlebrooks has the burden of proving damages by a preponderance of the evidence. But the law does not require that Mr. Middlebrooks prove the amount of [his/her] losses with mathematical precision; it requires only as much definiteness and accuracy as circumstances permit.

[You are instructed that Mr. Middlebrooks has a duty under the law to "mitigate" [his/her] damages--that means that Mr. Middlebrooks must take advantage of any reasonable opportunity that may have existed under the circumstances to reduce or minimize the loss or damage caused by Teva.  It is Teva burden to prove that Mr. Middlebrooks has failed to mitigate.  So if Teva persuades you by a preponderance of the evidence that Mr. Middlebrooks failed to take advantage of an opportunity that was reasonably available to [him/her], then you must reduce the amount of Mr. Middlebrooks' damages by the amount that could have been reasonably obtained if he had taken advantage of such an opportunity.]

[In assessing damages, you must not consider attorney fees or the costs of litigating this case. Attorney fees and costs, if relevant at all, are for the court and not the jury to determine. Therefore, attorney fees and costs should play no part in your calculation of any damages.]

**Jury Instruction #8:**
**<u>Title VII Definition – Punitive Damages</u>**
**(Third Cir. Model 5.4.2)**

Mr. Middlebrooks claims the acts of Teva were done with malice or reckless indifference to Mr. Middlebrooks' federally protected rights and that as a result there should be an award of what are called "punitive" damages. A jury may award punitive damages to punish a Teva, or to deter the Teva and others like the Teva from committing such conduct in the future. [Where appropriate, the jury may award punitive damages even if the Mr. Middlebrooks suffered no actual injury, and so receives nominal rather than compensatory damages.]

An award of punitive damages is permissible in this case only if you find by a preponderance of the evidence that a management official of Teva personally acted with malice or reckless indifference to Mr. Middlebrooks' federally protected rights. An action is with malice if a person knows that it violates the federal law prohibiting discrimination and does it anyway. An action is with reckless indifference if taken with knowledge that it may violate the law.

**[For use where the Teva raises a jury question on good-faith attempt to comply with the law:**

But even if you make a finding that there has been an act of discrimination with malice or reckless disregard of Mr. Middlebrooks' federal rights, you cannot award punitive damages if Teva proves by a preponderance of the evidence that it made a good-faith attempt to comply with the law, by adopting policies and procedures designed to prevent unlawful discrimination such as that suffered by Mr. Middlebrooks.]

An award of punitive damages is discretionary; that is, if you find that the legal requirements for punitive damages are satisfied [and that Teva has not proved that it made a good-faith attempt to comply with the law], then you may decide to award punitive damages, or you may decide not to award them. I will now discuss some considerations that should guide your exercise of this discretion.

If you have found the elements permitting punitive damages, as discussed in this instruction, then you should consider the purposes of punitive damages. The purposes of punitive damages are to punish a Teva for a malicious or reckless disregard of federal rights, or to deter a Teva and others like the Teva from doing similar things in the future, or both. Thus, you may consider whether to award punitive damages to punish Teva. You should also consider whether actual damages standing alone are sufficient to deter or prevent Teva from again performing any wrongful acts it may have performed. Finally, you should consider whether an award of punitive damages in this case is likely to deter others from performing wrongful acts similar to those Teva may have committed.

If you decide to award punitive damages, then you should also consider the purposes of punitive damages in deciding the amount of punitive damages to award. That is, in deciding the amount of punitive damages, you should consider the degree to which Teva should be punished for its wrongful conduct, and the degree to which an award of one sum or another will deter Teva or others from committing similar wrongful acts in the future.

[The extent to which a particular amount of money will adequately punish a Teva, and the extent to which a particular amount will adequately deter or prevent future misconduct, may depend upon the Teva' financial resources.  Therefore, if you find that punitive damages should be awarded against Teva, you may consider the financial resources of Teva in fixing the amount of those damages.]

**Jury Instruction #9:**
**Title VII Definition – Back Pay – For Advisory or Stipulated Jury**
**(Third Cir. Model 5.4.3)**

If you find that Teva intentionally discriminated against Mr. Middlebrooks ~~in~~ [~~describe~~ ~~employment action~~] by <u>wrongfully giving Mr. Middlebrooks a poor performance review, placing him on a PIP (Performance Improvement Plan) and/or terminated him,</u> then you must determine the amount of damages that Teva actions have caused Mr. Middlebrooks. Mr. Middlebrooks has the burden of proving damages by a preponderance of the evidence.

You may award as actual damages an amount that reasonably compensates Mr. Middlebrooks for any lost wages and benefits, taking into consideration any increases in salary and benefits, including pension, that Mr. Middlebrooks would have received from Teva had Mr. Middlebrooks not been the subject of Teva intentional discrimination.

*[Alternative One – for use when Mr. Middlebrooks does not seek back pay from periods earlier than the date that the unlawful employment practice occurred within the charge filing period:]* Back pay damages, if any, apply from the time Mr. Middlebrooks was [describe employment action] until the date of your verdict. [However, federal law limits a Mr. Middlebrooks' recovery for back pay to a maximum of a two year period before the Mr. Middlebrooks filed [his/her] discrimination charge with the Equal Employment Opportunity Commission. Therefore the back pay award in this case must be determined only for the period between [specify dates]].]

*[Alternative Two – for use when Mr. Middlebrooks alleging pay discrimination seeks back pay from periods earlier than the date that the unlawful employment practice occurred within the charge filing period but starting two years or less before the filing of the charge:]* In this case, Mr. Middlebrooks claims that Teva intentionally discriminated against Mr. Middlebrooks in [describe employment action] Mr. Middlebrooks on [date within the charge filing period]. Mr. Middlebrooks also claims that Teva committed a similar or related unlawful employment practice with regard to discrimination in compensation on [date outside charge filing period but two years or less before the filing of the charge (hereafter "prior date")]. If you find that Teva intentionally discriminated against Mr. Middlebrooks in [describe employment action] on [date within the charge filing period], and that Teva committed unlawful pay discrimination with respect to Mr. Middlebrooks on [prior date], and that the unlawful employment practice, if any, on [prior date] was similar or related to Teva [describe employment action] on [date within the charge filing period], then back pay damages, if any, apply from [prior date] until the date of your verdict. If you find that Teva intentionally discriminated against Mr. Middlebrooks in [describe employment action] on [date within the charge filing period], but you do not find that Teva committed a similar or related unlawful employment practice with regard to discrimination in compensation on [prior date], then back pay damages, if any, apply from [date within the charge filing period] until the date of your verdict.]

*[Alternative Three – for use when Mr. Middlebrooks alleging pay discrimination seeks back pay from periods earlier than the date that the unlawful employment practice occurred within the charge filing period based on an act more than two years before the filing of the charge:]* In this case, Mr. Middlebrooks claims that Teva intentionally discriminated against Mr.

17

Middlebrooks in [describe employment action] Mr. Middlebrooks on [date within the charge filing period]. Mr. Middlebrooks also claims that Teva committed a similar or related unlawful employment practice with regard to discrimination in compensation on [date outside charge filing period and more than two years before the filing of the charge (hereafter "prior date")]. If you find that Teva intentionally discriminated against Mr. Middlebrooks in [describe employment action] on [date within the charge filing period], and that Teva committed unlawful pay discrimination with respect to Mr. Middlebrooks on [prior date], and that the unlawful employment practice, if any, on [prior date] was similar or related to Teva [describe employment action] on [date within the charge filing period], then back pay damages, if any, apply from [date two years prior to filing date of charge (hereafter "two-year date")] until the date of your verdict. In that case, back pay applies from [two-year date] rather than [prior date] because federal law limits a Mr. Middlebrooks' recovery for back pay to a maximum of a two year period before the Mr. Middlebrooks filed [his/her] discrimination charge with the Equal Employment Opportunity Commission. If you find that Teva intentionally discriminated against Mr. Middlebrooks in [describe employment action] on [date within the charge filing period], but you do not find that Teva committed a similar or related unlawful employment practice with regard to discrimination in compensation on [prior date], then back pay damages, if any, apply from [date within the charge filing period] until the date of your verdict.]

You must reduce any award by the amount of the expenses that Mr. Middlebrooks would have incurred in making those earnings.

If you award back pay, you are instructed to deduct from the back pay figure whatever wages Mr. Middlebrooks has obtained from other employment during this period. However, please note that you should not deduct social security benefits, unemployment compensation and pension benefits from an award of back pay.

[You are further instructed that Mr. Middlebrooks has a duty to mitigate [his/her] damages--that is Mr. Middlebrooks is required to make reasonable efforts under the circumstances to reduce [his/her] damages. It is Teva burden to prove that Mr. Middlebrooks has failed to mitigate. So if Teva persuades you, by a preponderance of the evidence, that Mr. Middlebrooks failed to obtain substantially equivalent job opportunities that were reasonably available to [him/her], you must reduce the award of damages by the amount of the wages that Mr. Middlebrooks reasonably would have earned if he had obtained those opportunities.]

**[Add the following instruction if Teva claims "after-acquired evidence" of misconduct by the Mr. Middlebrooks:**

Teva contends that it would have made the same decision to [describe employment decision] Mr. Middlebrooks because of conduct that it discovered after it made the employment decision. Specifically, Teva claims that when it became aware of the [describe the after-discovered misconduct], it would have made the decision at that point had it not been made previously.

If Teva proves by a preponderance of the evidence that it would have made the same decision and would have [describe employment decision] Mr. Middlebrooks because of [describe after-discovered evidence], you must limit any award of back pay to the date Teva would have made the decision to [describe employment decision] Mr. Middlebrooks as a result of the after-

acquired information. ]

**Jury Instruction #10:**
**Title VII Definition – Front Pay – For Advisory or Stipulated Jury**
**(Third Cir. Model 5.4.4)**

You may determine separately a monetary amount equal to the present value of any future wages and benefits that Mr. Middlebrooks would reasonably have earned from Teva had Mr. Middlebrooks not [~~describe adverse employment action~~] wrongfully giving Mr. Middlebrooks a poor performance review, placing him on a PIP (Performance Improvement Plan) and/or terminated him for the period from the date of your verdict through a reasonable period of time in the future. From this figure you must subtract the amount of earnings and benefits Mr. Middlebrooks will receive from other employment during that time. Mr. Middlebrooks has the burden of proving these damages by a preponderance of the evidence.

[If you find that Mr. Middlebrooks is entitled to recovery of future earnings from Teva, then you must reduce any award by the amount of the expenses that Mr. Middlebrooks would have incurred in making those earnings.]

You must also reduce any award to its present value by considering the interest that Mr. Middlebrooks could earn on the amount of the award if he made a relatively risk-free investment. You must make this reduction because an award of an amount representing future loss of earnings is more valuable to Mr. Middlebrooks if he receives it today than if it were received at the time in the future when it would have been earned. It is more valuable because Mr. Middlebrooks can earn interest on it for the period of time between the date of the award and the date he would have earned the money. So you should decrease the amount of any award for loss of future earnings by the amount of interest that Mr. Middlebrooks can earn on that amount in the future.

[Add the following instruction if Teva claims "after-acquired evidence" of misconduct by the Mr. Middlebrooks:

Teva contends that it would have made the same decision to [describe employment decision] Mr. Middlebrooks because of conduct that it discovered after it made the employment decision. Specifically, Teva claims that when it became aware of the [describe the after-discovered misconduct], it would have made the decision at that point had it not been made previously.

If Teva proves by a preponderance of the evidence that it would have made the same decision and would have [describe employment decision] Mr. Middlebrooks because of [describe after-discovered evidence], then you may not award Mr. Middlebrooks any amount for wages that would have been received from Teva in the future.]

**Jury Instruction #11:**
**ADEA Introductory Instruction**
**(Third Cir. Model 8.0)**

In this case the Mr. Middlebrooks has made a claim under the Federal Civil Rights statute that prohibits age discrimination against [an employee] [~~an applicant for employment~~], if that person is 40 years of age or older. This statute is known as the Age Discrimination in Employment Act or "ADEA."

Specifically, Mr. Middlebrooks claims that he was [~~denied employment~~] [~~describe the employment action at issue~~] denied an award of equity, <u>wrongfully given a poor performance review, placed on a PIP (Performance Improvement Plan) and/or terminating him by</u> ~~by the~~ Teva because of Mr. Middlebrooks' age.

Teva denies that Mr. Middlebrooks was discriminated against because of [his~~/her~~] age. Further, Teva asserts that [describe any affirmative defenses].

I will now instruct you more fully on the issues you must address in this case.

21

**Jury Instruction #12:**
**Elements of an ADEA Claim – Disparate Treatment**
**(Third Cir. Model 8.1.1)**

In this case Mr. Middlebrooks is alleging that Teva [~~describe alleged treatment~~] failed to give him an equity award, wrongfully gave him a poor performance review, placed him on a PIP (Performance Improvement Plan) and/or terminated him. In order for Mr. Middlebrooks to recover on this discrimination claim against Teva, Mr. Middlebrooks must prove that Teva intentionally discriminated against Mr. Middlebrooks. This means that Mr. Middlebrooks must prove that [his~~/her~~] age was a determinative factor in Teva's decision to [~~describe action~~] wrongfully give Mr. Middlebrooks a poor performance review, place him on a PIP (Performance Improvement Plan) and/or terminate him.

To prevail on this claim, Mr. Middlebrooks must prove both of the following by a preponderance of the evidence:

First: Teva [~~failed to hire Mr. Middlebrooks~~] [~~failed to renew Mr. Middlebrooks'~~ ~~employment arrangement~~] [~~failed to promote Mr. Middlebrooks~~] [~~demoted Mr.~~ ~~Middlebrooks~~] [~~terminated Mr. Middlebrooks~~] [~~constructively discharged Mr.~~ ~~Middlebrooks~~] [~~or otherwise discriminated against Mr. Middlebrooks in a serious and~~ ~~tangible way with respect to Mr. Middlebrooks' compensation, terms, conditions, or~~ ~~privileges of employment~~][7] failed to give Mr. Middlebrooks an equity award, wrongfully gave Mr. Middlebrooks a poor performance review, placed him on a PIP (Performance Improvement Plan) and/or terminated him; and

Second: Mr. Middlebrooks' age was a determinative factor in Teva's decisions.

Although Mr. Middlebrooks must prove that Teva acted with the intent to discriminate, Mr. Middlebrooks is not required to prove that Teva acted with the particular intent to violate Mr. Middlebrooks' federal civil rights. Moreover, Mr. Middlebrooks is not required to produce direct evidence of intent, such as statements admitting discrimination. Intentional discrimination may be inferred from the existence of other facts.

You should weigh all the evidence received in the case in deciding whether Teva intentionally discriminated against Mr. Middlebrooks. [For example, you have been shown statistics in this case. Statistics are one form of evidence that you may consider when deciding whether a Teva intentionally discriminated against a Mr. Middlebrooks. You should evaluate statistical evidence along with all the other evidence.]

Teva has given nondiscriminatory reasons for its [describe Teva's action]. If you believe Teva's stated reasons and if you find that the [adverse employment action] would have occurred because of Teva's stated reasons regardless of Mr. Middlebrooks' age, then you must find for Teva. If you disbelieve Teva's stated reasons for its conduct, then you may, but need not, find that Mr. Middlebrooks has proved intentional discrimination. In determining whether Teva's stated reasons for its actions was a pretext, or excuse, for discrimination, you may not question Teva

---

[7] Please see the Comment for discussion of this list of alternatives.

business judgment. You cannot find intentional discrimination simply because you disagree with the business judgment of Teva or believe it is harsh or unreasonable. You are not to consider Teva's wisdom. However, you may consider whether Mr. Middlebrooks has proven that Teva's reasons are merely a cover-up for discrimination.

**Concluding instruction:**

Ultimately, you must decide whether Mr. Middlebrooks has proven that [his/~~her~~] age was a determinative factor in [~~Teva' employment decision.~~] Teva's failure to give him an equity award, wrongfully giving Mr. Middlebrooks a poor performance review, placing him on a PIP (Performance Improvement Plan) and/or terminating him.  "Determinative factor" means that if not for the Mr. Middlebrooks 's age, the [adverse employment action] would not have occurred.

In deciding whether age was a determinative factor, you must be careful to distinguish age from other factors that are not dependent on age. [For example, if Teva action was based on Mr. Middlebrooks' seniority, this is not an age-dependent decision. A person's seniority is based on time with the employer, and this is not the same factor as the person's age. Thus, an employer does not violate the ADEA just by interfering with an older employee's benefits that would have vested by virtue of the employee's years of service.]

**Jury Instruction #13:**
**Elements of an ADEA Claim – Harassment – Hostile Work Environment – Tangible**
**Employment Action**
**(Third Cir. Model 8.1.2)**

Mr. Middlebrooks claims that he was subjected to harassment by Teva [names] and that this harassment was motivated by Mr. Middlebrooks' age.

[~~Employer~~] Teva is liable for the actions of [names] in Mr. Middlebrooks' claim of harassment if Mr. Middlebrooks proves all of the following elements by a preponderance of the evidence:

First: Mr. Middlebrooks was subjected to [describe alleged conduct or conditions giving rise to Mr. Middlebrooks' claim] by [names].

Second: [Names] conduct was not welcomed by Mr. Middlebrooks.

Third: [Names] conduct was motivated by the fact that Mr. Middlebrooks was [state Mr. Middlebrooks' age at the time of the alleged events giving rise to Mr. Middlebrooks' claim; must have been age 40 or older].

Fourth: The conduct was so severe or pervasive that a reasonable person in Mr. Middlebrooks' position would find Mr. Middlebrooks' work environment to be hostile or abusive. This element requires you to look at the evidence from the point of view of a reasonable person of [Mr. Middlebrooks' age]'s reaction to Mr. Middlebrooks' work environment.

Fifth: Mr. Middlebrooks believed [his/her] work environment to be hostile or abusive as a result of [names] conduct.

Sixth: Mr. Middlebrooks suffered an adverse "tangible employment action" as a result of the hostile work environment; a tangible employment action  is defined as a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.

**[For use when the alleged harassment is by non-supervisory employees:**

Seventh: Management level employees knew, or should have known, of the abusive conduct. Management level employees should have known of the abusive conduct if 1) an employee provided management level personnel with enough information to raise a probability of age harassment in the mind of a reasonable employer, or if 2) the harassment was so pervasive and open that a reasonable employer would have had to be aware of it.]

**Jury Instruction #14:**
**Elements of an ADEA Claim – Retaliation**
**(Third Cir. Model 8.1.5)**

Mr. Middlebrooks claims that Teva discriminated against [him/her] because of Mr. Middlebrooks' [describe protected activity] complaints about age discrimination.

To prevail on this claim, Mr. Middlebrooks must prove all of the following by a preponderance of the evidence:

First: Mr. Middlebrooks [describe activity protected by the ADEA] made complaints of age discriminatory conduct.

Second: Mr. Middlebrooks was subjected to materially adverse actions at the time, or after, the protected conduct took place.

Third: There was a causal connection between [describe challenged activity] Teva's wrongfully giving Mr. Middlebrooks a poor performance review, placing him on a PIP (Performance Improvement Plan) and/or terminating him and Mr. Middlebrooks' [describe Mr. Middlebrooks' protected activity] complaints about age discrimination.

Concerning the first element, Mr. Middlebrooks need not prove the merits of [his/her] [describe Mr. Middlebrooks' activity] age, but only that he was acting under a reasonable,[8] good faith belief that Mr. Middlebrooks' [or someone else's] rights under the Age Discrimination in Employment Act were violated.

Concerning the second element, the term "materially adverse" means that Mr. Middlebrooks must show [describe alleged retaliatory activity] that Teva wrongfully giving Mr. Middlebrooks a poor performance review, placing him on a PIP (Performance Improvement Plan) and/or terminating him was serious enough that it well might have discouraged a reasonable worker from [describe Mr. Middlebrooks' protected activity] complaining about age discriminatory conduct. . [The activity need not be related to the workplace or to Mr. Middlebrooks' employment.]

Concerning the third element, that of causal connection, that connection may be shown in many ways. For example, you may or may not find that there is a sufficient connection through timing, that is Teva action followed shortly after Teva became aware of Mr. Middlebrooks' [describe activity] age. Causation is, however, not necessarily ruled out by a more extended passage of time. Causation may or may not be proven by antagonism shown toward Mr. Middlebrooks or a change in demeanor toward Mr. Middlebrooks.

Ultimately, you must decide whether Mr. Middlebrooks' [protected activity] age had a determinative effect on [describe alleged retaliatory activity] Teva's wrongfully giving Mr. Middlebrooks a poor performance review, placing him on a PIP (Performance Improvement Plan) and/or terminating him. "Determinative effect" means that if not for Mr. Middlebrooks' [protected

---

[8] See the Comment for a discussion of the allocation of responsibility for determining the reasonableness of the Mr. Middlebrooks' belief.

あ
あ

activity] age, [~~describe alleged retaliatory activity~~] <u>Teva's wrongfully giving him a poor performance review, placing him on a PIP (Performance Improvement Plan) and/or terminating him</u> would not have occurred.

**Jury Instruction #15:**
**ADEA Definitions – Hostile or Abusive Work Environment**
**(Third Cir. Model 8.2.1)**

In determining whether a work environment is "hostile" you must look at all of the circumstances, which may include:

• The total physical environment of Mr. Middlebrooks' work area.

• The degree and type of language and insult that filled the environment before and after Mr. Middlebrooks arrived.

• The reasonable expectations of Mr. Middlebrooks upon entering the environment.

• The frequency of the offensive conduct.

• The severity of the conduct.

• The effect of the working environment on Mr. Middlebrooks' mental and emotional well-being.

• Whether the conduct was unwelcome, that is, conduct Mr. Middlebrooks regarded as unwanted or unpleasant.

• Whether the conduct was pervasive.

• Whether the conduct was directed toward Mr. Middlebrooks.

• Whether the conduct was physically threatening or humiliating.

• Whether the conduct was merely a tasteless remark.

• Whether the conduct unreasonably interfered with Mr. Middlebrooks' work performance.

Conduct that amounts only to ordinary socializing in the workplace, such as occasional horseplay, occasional use of abusive language, tasteless jokes, and occasional teasing, does not constitute an abusive or hostile work environment. A hostile work environment can be found only if there is extreme conduct amounting to a material change in the terms and conditions of employment. Moreover, isolated incidents, unless extremely serious, will not amount to a hostile work environment.

It is not enough that the work environment was generally harsh, unfriendly, unpleasant, crude or vulgar to all employees. In order to find a hostile work environment, you must find that Mr. Middlebrooks was harassed because of [his/her] age. The harassing conduct may, but need not be age-based in nature. Rather, its defining characteristic is that the harassment complained of was linked to Mr. Middlebrooks' age. The key question is whether Mr. Middlebrooks, as a person of [Mr. Middlebrooks' age] was subjected to harsh employment conditions to which substantially younger employees were not.

27

It is important to understand that, in determining whether a hostile work environment existed at the [employer's workplace] you must consider the evidence from the perspective of a reasonable person of [Mr. Middlebrooks' age] in the same position. That is, you must determine whether a reasonable person of [Mr. Middlebrooks' age] would have been offended or harmed by the conduct in question. You must evaluate the total circumstances and determine whether the alleged harassing behavior could be objectively classified as the kind of behavior that would seriously affect the psychological or emotional well-being of a reasonable person of [Mr. Middlebrooks' age]. The reasonable person of [Mr. Middlebrooks' age] is simply one of normal sensitivity and emotional make-up.

**Jury Instruction #16:**
**ADEA Damages – General Compensatory Damages**
**(Third Cir. Model 8.4.1)**

*No Instruction*

General compensatory damages, such as for pain and suffering, are not recoverable in ADEA actions. *Rogers v. Exxon Research and Engineering Co.,* 550 F.2d 834, 842 (3d Cir. 1977) (relying on legislative history tying recovery under the ADEA to that provided by the Fair Labor Standards Act, and not Title VII; holding that "damages for pain and suffering or emotional distress cannot properly be awarded in ADEA cases"), *overruled on other grounds by Holliday v. Ketchum, MacLeod & Grove, Inc.,* 584 F.2d 1221 (3d Cir. 1978) (en banc); *Haskell v. Kaman Corp.,* 743 F.2d 113, 120-21 (2d Cir. 1984) ("Mr. Middlebrooks is not entitled to recovery for emotional distress in ADEA actions").

The ADEA mandates an award for back pay and liquidated damages, and permits an award for front pay. See Instructions 8.4.2 - 8.4.4 for instructions covering these awards.

**Jury Instruction #17:**
**ADEA Damages – Back Pay**
**(Third Cir. Model 8.4.2)**

If you find that Teva intentionally discriminated against Mr. Middlebrooks ~~in [describe employment action]~~ by failing to give Mr. Middlebrooks an equity award, wrongfully giving Mr. Middlebrooks a poor performance review, placing him on a PIP (Performance Improvement Plan) and/or terminating him ~~Mr. Middlebrooks~~, then you must determine the amount of damages that Teva actions have caused Mr. Middlebrooks. Mr. Middlebrooks has the burden of proving damages by a preponderance of the evidence.

You must award as actual damages an amount that reasonably compensates Mr. Middlebrooks for any lost wages and benefits, taking into consideration any increases in salary and benefits, including pension, that Mr. Middlebrooks would have received from Teva had Mr. Middlebrooks not been the subject of Teva intentional discrimination.

Back pay damages, if any, apply from the time Mr. Middlebrooks was ~~[describe adverse employment action]~~ not given an equity award, wrongfully given a poor performance review, placed on a PIP (Performance Improvement Plan) and/or terminated until the date of your verdict.

You must reduce any award by the amount of the expenses that Mr. Middlebrooks would have incurred in making those earnings.

If you award back pay, you are instructed to deduct from the back pay figure whatever wages Mr. Middlebrooks has obtained from other employment during this period. However, please note that you should not deduct social security benefits, unemployment compensation and pension benefits from an award of back pay.

[You are further instructed that Mr. Middlebrooks has a duty to mitigate [his~~/her~~] damages--that is Mr. Middlebrooks is required to make reasonable efforts under the circumstances to reduce [his~~/her~~] damages. It is Teva burden to prove that Mr. Middlebrooks has failed to mitigate. So if Teva persuades you, by a preponderance of the evidence, that Mr. Middlebrooks failed to obtain substantially equivalent job opportunities that were reasonably available to [him~~/ her~~], you must reduce the award of damages by the amount of the wages that Mr. Middlebrooks reasonably would have earned if he had obtained those opportunities.]

[In assessing damages, you must not consider attorney fees or the costs of litigating this case. Attorney fees and costs, if relevant at all, are for the court and not the jury to determine. Therefore, attorney fees and costs should play no part in your calculation of any damages.]

**[Add the following instruction if the employer claims "after-acquired evidence" of misconduct by the Mr. Middlebrooks:**

Teva contends that it would have made the same decision to [describe employment decision] Mr. Middlebrooks because of conduct that Teva discovered after it made the employment decision. Specifically, Teva claims that when it became aware of the [describe the after-discovered misconduct], Teva would have made the decision at that point had it not been made previously.

If Teva proves by a preponderance of the evidence that it would have made the same decision and would have [describe employment decision] Mr. Middlebrooks because of [describe after-discovered evidence], you must limit any award of back pay to the date Teva would have made the decision to [describe employment decision] Mr. Middlebrooks as a result of the after-acquired information.]

**Jury Instruction #18:**
**ADEA Damages – Liquidated Damages**
**(Third Cir. Model 8.4.3)**

If you find that Mr. Middlebrooks is entitled to recover damages for lost wages or benefits, then I will also ask you to decide a further question: whether Teva conduct was willful. For purposes of your answer to that question, Mr. Middlebrooks has the burden of proving willfulness by a preponderance of the evidence.

You must find Teva violation of the ADEA to be willful if Teva knew or showed reckless disregard for whether the [challenged action] Teva's failure to give Mr. Middlebrooks an equity award, wrongfully giving Mr. Middlebrooks a poor performance review, placing him on a PIP (Performance Improvement Plan) and/or terminating him was prohibited by the law. To establish willfulness it is not enough to show that Teva acted negligently. If you find that Teva did not know, or knew only that the law was potentially applicable, and did not act in reckless disregard as to whether its conduct was prohibited by the law, then Teva conduct was not willful.

**Jury Instruction #19:**
**ADEA Damages – Front Pay**
**(Third Cir. Model 8.4.4)**

You may determine and award separately a monetary amount equal to the present value of any future wages and benefits that Mr. Middlebrooks would reasonably have earned from Teva had ~~Mr. Middlebrooks~~ not [~~describe adverse employment action~~] been denied an equity award or terminated for the period from the date of your verdict through a reasonable period of time in the future. From this figure you must subtract the amount of earnings and benefits Mr. Middlebrooks will receive from other employment during that time. Mr. Middlebrooks has the burden of proving these damages by a preponderance of the evidence.

[If you find that Mr. Middlebrooks is entitled to recovery of future earnings from Teva, then you must reduce any award by the amount of the expenses that Mr. Middlebrooks would have incurred in making those earnings.]

You must also reduce any award to its present value by considering the interest that Mr. Middlebrooks could earn on the amount of the award if he made a relatively risk-free investment. The reason you must make this reduction is because an award of an amount representing future loss of earnings is more valuable to Mr. Middlebrooks if he receives it today than if it were received at the time in the future when it would have been earned.  It is more valuable because Mr. Middlebrooks can earn interest on it for the period of time between the date of the award and the date he would have earned the money.  So you should decrease the amount of any award for loss of future earnings by the amount of interest that Mr. Middlebrooks can earn on that amount in the future.

**[Add the following instruction if Teva claims "after-acquired evidence" of misconduct by the Mr. Middlebrooks:**

Teva contends that it would have made the same decision to [describe employment decision] Mr. Middlebrooks because of conduct that it discovered after it made the employment decision. Specifically, Teva claims that when it became aware of the [describe the after-discovered misconduct], it would have made the decision at that point had it not been made previously.

If Teva proves by a preponderance of the evidence that it would have made the same decision and would have [describe employment decision] Mr. Middlebrooks because of [describe after-discovered evidence], then you may not award Mr. Middlebrooks any amount for wages that would have been received from Teva in the future.**]**