## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **STEPHEN MIDDLEBROOKS**       : | **CIVIL ACTION NO. 17-0412** |
| : | |
| **Plaintiff,**    : | |
| **v.**        : | |
| : | |
| **TEVA PHARMACEUTICALS**   : | |
| **USA, INC.** | |
| : | |
| : | |
| **Defendant.**    : | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR A NEW TRIAL PURSUANT TO FED.R.CIV.P. 59(A)

Respectfully submitted,

Dated: January 4, 2019    BY:   /s/ Caren N. Gurmankin
                                        Caren N. Gurmankin, Esq.
                                        Console Mattiacci Law, LLC
                                        1525 Locust Street, 9th Floor
                                        Philadelphia, PA 19102

# TABLE OF CONTENTS

I.      INTRODUCTION...........................................................................................1

II.     LEGAL STANDARD....................................................................................2

III.    ARGUMENT.................................................................................................3

        A.  The Court Properly Instructed The Jury On Both "Pretext" and "Mixed-Motive" Theories........................................................................................3

        B.  The Court Did Not Err In Instructing The Jury On Punitive Damages, Or In Connection With The Verdict Sheet Question On Punitive Damages; As Such, Defendant Is Not Entitled To A New Trial Regarding The Same......................6

        C.  Defendant's Motion For A New Trial Based On the Verdict Sheet Is Without Legitimate Basis And Should Be Denied..................................................8

            1.  Defendant's argument that it is entitled to a new trial because of issues regarding the verdict sheet and how the jury completed the same is without legitimate basis and should be rejected........................................................................8

            2.  The verdict sheet questions regarding back pay were clear and the jury's award was consistent with them.....................................................................10

        D.  Defendant Is Not Entitled To A New Trial On Plaintiff's Emotional Distress Damages; The Jury's $200,000 Award Should Not Be Disturbed..................................11

        E.  The Jury's Front Pay Award Should Not Be Disturbed...................................14

        F.  The Jury's Punitive Damages Award Should Be Upheld.................................16

IV.     CONCLUSION...................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Allstate Ins. Co. v. Hrin,*
    2006 U.S. Dist. LEXIS 62185 (E.D. Pa. 2006) ................................................. 6, 18

*Anastasio v. Schering Corp.,*
    838 F.2d 701 (3d Cir. 1988) ...................................................................................15

*Armbruster v. Unisys Corp.,*
    32 F.3d 768 (3d Cir. 1994) .......................................................................................3

*Bates v. Bd. of Educ. of Capital Sch. Dist.,*
    2000 U.S. Dist. LEXIS 4873 (D. Del. Mar. 31, 2000) ........................................16

*Bhaya v. Westinghouse Elec. Corp.,*
    922 F. 2d 184 (3d Cir. 1990) ....................................................................................2

*Bianchi v. City of Philadelphia,*
    80 Fed.Appx. 232 (3d Cir. 2003) ...........................................................................16

*Braden v. Lockheed Martin Corp.,*
    No. 14-4215, 2017 U.S. Dist. LEXIS 207236 (D.N.J. Dec. 18, 2017) .................13

*Briggs v. Temple Univ.,*
    2018 U.S. Dist. LEXIS 177418 (E.D.Pa. Oct. 16, 2018) ......................................13

*Connelly v. Lane Constr. Corp.,*
    809 F.3d 780 (3d Cir. 2016) .....................................................................................3

*Desert Palace, Inc. v. Costa,*
    539 U.S. 90 (2003) ....................................................................................................5

*Egan v. Del. River Port Auth.,*
    851 F.3d 263 (3d Cir. 2017) .....................................................................................6

*Griffiths v. CIGNA Corp.,*
    988 F.2d 457 (3d Cir. 1993) .....................................................................................4

*Harter v. V. GAF Corporation,*
    967 F.2d 846 (3d Cir. 1992) ...................................................................................17

*Hilburn v. State Dep't of Corr.,*
    2012 U.S. Dist. LEXIS 106536 (D.N.J. 2012) ........................................................7

*Jones v. Amerihealth Caritas*,
    95 F. Supp. 3d 807 (E.D.Pa. 2015)................................................................18

*Klein v. Hollings*,
    992 F.2d 1285 (3d Cir. 1993) ...................................................................2,3

*Kornicki v. Calmar S.S. Corp.*,
    460 F.2d 1134 (3d Cir. 1972) ....................................................................6

*Marrow v. Allstate Sec. & Investigative Servs.*,
    167 F. Supp. 2d 838 (E.D.Pa. 2001)......................................................18,19,20

*Moore v. Freeman*
    355 F.3d 558 (6th Cir. Oct. 21, 2003) ........................................................17,18

*Moskowitz v. Trustees of Purdue Univ.*,
    5 F. 3d 279 (7th Cir. 1993) .......................................................................18

*Moussa v. Pa. Dep't of Pub. Welfare*,
    289 F. Supp. 2d 639 (W.D.Pa. Oct. 23, 2003) ...............................................14

*Moyer v. Aetna Life Ins. Co.*,
    126 F.2d 141 (3d Cir. 1941) .......................................................................6

*Parexel Int'l Corp. v. Feliciano*,
    2008 U.S. Dist. LEXIS 98195 (E.D. Pa. Dec. 4, 2008) ........................................2

*Petrulio v. Teleflex Inc.*,
    2014 U.S. Dist. LEXIS 156568 (E.D. Pa. Nov. 5, 2014) .......................................8

*Potence v. Hazleton Area School District*,
    357 F.3d 366 (3d Cir. 2004) ......................................................................17

*Roberts Tech. Grp., Inc. v. Curwood, Inc.*,
    695 Fed. Appx. 48 (3d Cir. Jun. 16, 2017).................................................11,16

*Shea v. Galaxie Lumber & Constr. Co., Ltd.*,
    152 F.3d 729 (7th Cir. 1998)......................................................................17

*Travis v. Gary Community Mental Health Ctr, Inc.*,
    921 F. 2d 108 (7th Cir. 1990).....................................................................17

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN MIDDLEBROOKS | : | |
| | : | CIVIL ACTION NO. 17-0412 |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| TEVA PHARMACEUTICALS | : | |
| USA, INC. | | |
| | : | |
| | : | |
| Defendant. | : | |
| | : | |

**PLAINTIFF'S MEMORDANDUM IN SUPPORT OF HIS OPPOSITION TO
DEFENDANT'S MOTION FOR A NEW TRIAL PURSUANT TO FED.R.CIV.P. 59(A)[1]**

**I.    INTRODUCTION**

This was not a case in which the jury made snap, speculative decisions regarding both

liability and damages.  This case involved a four (4) day trial in which the jury:  heard or saw the

testimony of fifteen (15) witnesses; saw eighty one (81) exhibits that were admitted into

evidence (and which they took back into the jury room to review during deliberations); and,

carefully deliberated for over nine (9) hours, including well into the evening on the fourth day of

trial and returning on the following business day (after the weekend).

In finding for Plaintiff on his retaliation and retaliatory hostile work environment claims,

the jury awarded to Plaintiff $200,000 in compensatory damages for his emotional distress;

---

[1] Plaintiff notes that Defendant's Rule 50(b) Motion (Docket No. 147) includes Defendant's request, in the
alternative, for a new trial pursuant to Fed.R.Civ.P. 50(b).("…the movant may file a renewed motion for judgment
as a matter of law and may include an alternative or joint request for a new trial under Rule 59.")  To the extent that
Defendant's arguments are duplicative, Plaintiff relies on the arguments made in his opposition to Defendant's Rule
50(b) Motion.

$332,000 to Plaintiff from the denial of equity in 2015 through the time of trial; $332,000 in liquidated damages; $450,000 to Plaintiff in front pay; and, $5,000,000 in punitive damages.

There is ample evidence to support the jury's verdict in this case. There can be no legitimate dispute that the jury did its job in rendering the verdict in this case, and, as such, this Court should deny Defendant's Motion in its entirety.

## II.    LEGAL STANDARD

Granting a new trial requires meeting a "high threshold." *Parexel Int'l Corp. v. Feliciano*, 2008 U.S. Dist. LEXIS 98195 (E.D. Pa. Dec. 4, 2008) (citing *Grazier v. City of Philadelphia*, 328 F.3d 120, 128 (3d Cir. 2003)). "[A]bsent a showing of substantial injustice or prejudicial error, a new trial is not warranted and it is the court's duty to respect a plausible jury verdict." *Id.* (quoting *Montgomery Cty. v. MicroVote Corp.,* 152 F. Supp. 2d 784, 795 (E.D. Pa. 2001)).

Defendant's motion for a new trial requires the Court to consider: 1) whether an error was in fact committed; and 2) whether that error was so prejudicial that denial of a new trial would be inconsistent with substantial justice. *Bhaya v. Westinghouse Elec. Corp.,* 922 F. 2d 184, 187 (3d Cir. 1990); Fed.R.Civ.P. 61 ("Unless justice requires otherwise, no error in admitting or excluding evidence – or any other error by the court or a party – is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.").

Because granting a new trial based on the weight of the evidence is akin to a court substituting its judgment for that of the jury and usurping the jury's role as fact-finder, a district court has limited discretion to grant a new trial on this basis, with the exercise of such discretion receiving close scrutiny on appeal. *Klein v. Hollings,* 992 F.2d 1285, 1287 (3d Cir. 1993)

(internal citations omitted) (reversing trial court's decision to grant new trial).  This is particularly true where, as in this case, the subject matter was simple and within a layperson's understanding. *See id.* at 1290 (quoting *Williamson v. Consol Rail Corp.*, 926 F.2d 1344, 1352 (3d Cir. 1991)).  A jury's verdict should stand against a challenge based on the weight of the evidence unless it would result in a miscarriage of justice or shocks the conscience. *See, e.g., Klein*, 992 F.2d at 1290.[2]

Defendant's Motion for a new trial pursuant to Fed.R.Civ.P. 59(a) should be denied in its entirety, as it does not meet its heavy burden of showing that the jury's verdict was a miscarriage of justice or shocks the conscience.

## III.   ARGUMENT

### A.   The Court Properly Instructed The Jury On Both "Pretext" and "Mixed-Motive" Theories

Defendant's assertion that this Court should not have instructed the jury on both "pretext" and "mixed-motive" theories of discrimination under Title VII[3] contradicts Third Circuit precedent, to which Defendant itself cites:[4] "an employee may present his case under both theories and **the district court must then decide whether one _or both_ theories properly apply** at some point in the proceedings prior to instructing the jury." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 781 n.17 (3d Cir. 1994). *See also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 788 (3d Cir. 2016) ("whether a case is a pretext case or a mixed-motives case is a question for the court once all the

---

[2] In reviewing the propriety of a jury verdict, it is court's "obligation to uphold the jury's award if there exists a reasonable basis to do so." *Motter v. Everest & Jennings, Inc.,* 883 F.2d 1223, 1230 (3d Cir. 1989).  The Third Circuit has cautioned:  "While a district court has discretion in determining whether a jury's verdict is excessive, it is undisputed that the court *may not* vacate or reduce the award merely because it would have granted a lesser amount of damages.  For the court to disturb a jury verdict, 'the damages assessed by the jury must be so unreasonable as to offend the conscience of the Court.'"  *Id.* (quoting *Murray v. Fairbanks Morse,* 610 F.2d 149, 152 (3d Cir. 1979).
[3] Defendant's Memorandum of Law, p. 8: "rather than *choosing a theory* before charging the jury as *Armbruster* mandates, the Court provided dual charges incorporating both pretext and mixed motives." (Emphasis added).
[4] *Id.*

evidence has been received… Indeed, we have said that, **even at trial, an employee 'may present his case under both theories,**' provided that, prior to instructing the jury, **the judge decides** whether one **or both** theories applies." (emphasis added, internal citations omitted).[5]

Further, the case that Defendant relies on to support its argument that a "dual charge is confusing" and therefore should result in a new trial, is wholly distinguishable. In *Griffiths v. CIGNA Corp.*, 988 F.2d 457 (3d Cir. 1993), the Third Circuit criticized the district court for failing to make a determination of either "pretext" or "mixed motive," or both, but rather "simply *combined* a mixed motive charge with a pretext charge." (emphasis added). The district court in *Griffiths* instructed the jury that it could consider the employer's explanations as "a *pretext or a sham and* that in actuality, *at least one of the motivating factors* was retaliation against him, *even though there may have been other valid reasons* [for termination]." *Id.* 472 n.7 (emphasis added).

Conversely, the Court in the instant case heard both sides' arguments on the matter,[6] heard all the evidence, and eventually decided to instruct the jury on *both* theories of discrimination.[7] The verdict slip included two (2) *distinct* questions; one based on the "pretext" theory (question No. 1) and one based on the "mixed-motive" theory (question No. 2). During the Jury Charge Conference, the Court spoke *at length* about the distinction between the questions and the analysis under each one, precisely to avoid confusion on the party of the jury. (Ex. "A," 11/16/18 TT 177:4-

---

[5] See also Third Circuit Model Jury Instructions for Employment Discrimination Claims Under Title VII, 5.1.1. p. 14.
[6] During pre-trial conference on November 6th, 2018; Plaintiff's Motion to include a mixed-motive Title VII instruction (ECF No. 111); during Conference pre-Jury Charge (November 16, 2018 Charge Conference Trial Transcript (hereinafter 11/__/18 TT__) pp. 32-36)(Relevant excerpts of the trial transcript are attached hereto as Ex. "A").
[7] *See* Ex. "A," 11/16/18 Charge Conference TT 35:1-16, 36:2-5 (after hearing Defense Counsel argue against including both instructions): "The Court: … I disagree with you. Mr. Rappoport: Okay. The Court: … I think there is evidence of it. **I am going to give a mixed motive on national origin**, unless the Plaintiff want to withdraw it. … Ms. Mattiacci: No, Your Honor. The Court: All right. **So I'm going to give a mixed motive charge. I think there's enough evidence. Based upon the cases I read on mixed motive, I believe there's enough evidence for a mixed motive charge.** … **I'm going to go very slow**, in some sense, for the – **when I go through the pretext and mixed motive charge to the jury. Make sure they understand it.** … The Court: I – **I accept that there is evidence to allow mixed motive**, and courts – **and many circuit courts have approved the idea that you ought to dual charge.**"

4

180:22. By way of example:

> **As you see in question 1 and 2, if you look at them, okay, they are identical with a difference of one word, "determinative" in 1 and "motivating" in 2**. Okay? **I am going to tell you the difference there**.
> … I am going to talk about the second one now, first. Mr. Middlebrooks must prove his national origin was a motivating factor in Teva's decision to terminate [his] employment. **That's one way he can win this** …
> So in showing Mr. Middlebrooks' national origin was a motivating factor for Teva's action, Mr. Middlebrooks is **not required to prove his national origin was the sole motivation or even the primary motivation** for Teva's decision. … **In this instruction, I am using the word "motivating."** I am going to tell you Mr. Middlebrooks' national origin was a motivating factor if his national origin **played a motivating part** in Teva's decision to terminate his employment.
> …
> **The alternative way that Mr. Middlebrooks can show national origin discrimination is the work "determinative." That's the first question.** Mr. Middlebrooks must prove his nation origin was **a determinative factor in Teva's decision** to terminate his employment.
> …
> Ultimately, **under this alternative, the word "determinative,"** you must decide whether Mr. Middlebrooks has proven his national origin **was a determinative factor** in Teva's decision to terminate his employment. Okay. **Determinative factor means that if not for Mr. Middlebrooks national origin, the termination would not have occurred**.

(emphasis added).[8]

Defendant further argues, in a footnote (p. 8 n.6 to its Motion for New Trial), that the Court should not have included the mixed-motive instruction because the evidence the Court referred to during the Jury Charge Conference is not "direct evidence." Defendant misstates the law.  In *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101 (2003), the Supreme Court made clear that a plaintiff is **not required to produce direct evidence** of discrimination to obtain a mixed-motive jury instruction under Title VII. The Court relied on the unambiguous statutory text of 42 USCS § 2000e-2(m) that "does not mention, much less require, that a plaintiff make a heightened showing

---

[8] Additionally, the charge given to the jury by the district court in *Griffiths* "did not advise the jury that the appellants' lawful motivation could be a defense even if the appellants also were motivated lawfully." 988 F.2d at p. 172. This is clearly not so in the present matter. *See* question No. 3 in the verdict slip; Exhibit "A", 11/16/18 TT 178:21-179:1.

through direct evidence," and on discrimination caselaw that shows that "[c]ircumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Id.* at 98-100. *See also Egan v. Del. River Port Auth.*, 851 F.3d 263, 274-5 (3d Cir. 2017).

### B. **The Court Did Not Err In Instructing The Jury On Punitive Damages, Or In Connection With The Verdict Sheet Question On Punitive Damages; As Such, Defendant Is Not Entitled To A New Trial Regarding The Same**

In its present Motion, Defendant makes the same argument as it does in its Fed.R.Civ.P. 50(b) Motion regarding the jury's award of punitive damages to Plaintiff, i.e., that the jury should not have been instructed on punitive damages as Defendant (allegedly) established its good faith defense. (Defendant also asserts, again, that it was assessed punitive damages "for the actions of Aharoni, who was not even a Teva employee," which is in *direct contravention* to the agreement on the record that the parties made at the time of the stipulated dismissal of Defendant Teva Pharmaceutical Industries, Ltd.). Rather than repeat Plaintiff's argument in opposition to the same, he relies on that set forth in Section III.C. of his opposition to Defendant's Rule 50(b) Motion.

Defendant further incorrectly asserts in its present Motion seeking a new trial that this Court committed reversible error by refusing to include on the verdict sheet a question regarding the "good faith" defense to the plaintiff's entitlement to punitive damages. The trial court has broad discretion in deciding the type of verdict form to submit to the jury, and the issues and questions to be included therein. Fed.R.Civ.P. 49; *Moyer v. Aetna Life Ins. Co.*, 126 F.2d 141, 145 (3d Cir. 1941) ("Civil Procedure Rule 49 places the matter of submitting interrogatories to the jury entirely within the discretion of the trial judge."); *see also Kornicki v. Calmar S.S. Corp.*, 460 F.2d 1134 (3d Cir. 1972), *Allstate Ins. Co. v. Hrin*, 2006 U.S. Dist. LEXIS 62185, 13 (E.D. Pa. 2006).

In the present matter, the Court instructed the jury on the "good faith" defense:

> But even if you make a finding there has been an act of discrimination with malice [or] reckless indifference of Mr. Middlebrooks' rights, you cannot award punitive

6

> damages if Teva proved by a preponderance of the evidence that it made a good
> faith attempt to comply with the law by adopting policies and procedures designed
> to prevent retaliation for complaining about alleged discriminatory conduct.
>
> An award of punitive damages is discretionary with you; that is, if you think the
> case requirements – you find legal requirements have been met for punitive
> damages, then you can decide to award punitive damages or decide not to award
> punitive damages.

(Ex. "A," 11/16/18 TT 194:11-23).

Defendant's current complaint that this Court "buried" the instruction "in the middle of a

long instruction on punitive damages and that the same "consisted of a single sentence

acknowledging the 'good faith' element" is nonsensical.  The instructions given to the jury were

identical to the Third Circuit Model Civil Jury Instructions for Employment Discrimination Claims

Under Title VII, Section 5.4.2 ("Punitive Damages"), p. 76.[9]

Defendant has not cited to any legal authority in support of its assertion that this Court

committed reversible error in not including the "good faith" defense as a separate question on the

verdict sheet.[10]  In *Hilburn v. State Dep't of Corr.*, 2012 U.S. Dist. LEXIS 106536 (D.N.J. 2012),

the Court held that "Generally, the failure to include an affirmative defense on a verdict form is

not an abuse of discretion where the form, read in light of the jury instructions, informed the jury

that in finding the defendant liable they were implicitly rejecting the affirmative defense." (*citing*

*to, inter alia, Moyer*, 126 F.2d at 145).  As long as the jury was properly instructed regarding the

---

[9] To the extent that Defendant has any argument that additional language should have been included in the jury instructions regarding the "good faith" affirmative defense, which it does not, it waived the same.  Defendant did not make any argument at the parties' Charge Conference that the jury instructions on punitive damages should include any language other than what the Third Circuit Model Jury Instructions provide. (Ex. "A," 11/16/18 Charge Conference TT 15:2-19:6).

[10] Defendant cited only to cases involving a failure to charge the jury on an affirmative defense; here, of course, the jury was instructed in the good faith defense (as Defendant requested). (11/16/18 TT 194:11-18).  In *Fornicoia v. Haemonetics Corp.*, 131 Fed. Appx. 867, Defendant incorrectly represented that the Court in that matter held that "it was not proper to omit from a verdict sheet a pertinent question simply because it is an affirmative defense." Def.'s Mot. p. 11 (Docket No. 146).  That finding in *Fornicoia* was actually in connection with jury instructions, not the verdict sheet.  Similarly, in *Hardman v. Autozone, Inc.*, 2004 U.S. Dist. LEXIS 2171 (D.Kan. Feb. 11, 2004), the issue was not about the verdict sheet (which Defendant does not make clear in its description of the case in its Motion), but about jury instructions; unlike in the present matter, the court in that case did not include the "good faith" defense to punitive damages when it charged the jury.

employer's affirmative defense, *as in the present matter*, the Court did not abuse its discretion by not including a separate interrogatory of the same in the verdict form. *Id.*

### C. **Defendant's Motion For A New Trial Based On the Verdict Sheet Is Without Legitimate Basis And Should Be Denied**

Defendant's argument that it is entitled to a new trial because of issues regarding the verdict sheet and how the jury completed the same is without legitimate basis and should be rejected.

### 1. **The jury's answers to the damages questions on the verdict sheet were consistent**

Defendant first incorrectly asserts that it is entitled to a new trial because the questions on the verdict sheet regarding Plaintiff's back pay asks about the amount of lost back pay damages that Plaintiff would have received from Defendant had he not been the subject of Defendant's "intentional discrimination" and the jury concluded that Plaintiff was subjected to retaliation, not discrimination, by Defendant[11].

Defendant's arguments are baseless. Intentional discrimination *is* retaliation. *See, e.g.*, the elements necessary to prove a retaliatory hostile work environment claim: (1) he suffered *intentional discrimination* because of his protected activity; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected him; (4) it would have detrimentally affected a reasonable person in like circumstances; (5) he suffered materially adverse action or actions in relation to the hostile work environment; and (6) a basis for employer liability is present. *Petrulio v. Teleflex Inc.*, No. 12-7187, 2014 U.S. Dist. LEXIS 156568, at *26 (E.D. Pa. Nov. 5, 2014)(emphasis added).

---

[11] The jury did conclude that Defendant had subjected Plaintiff to "intentional discrimination."; it answered "yes" to Question No. 2 on the verdict sheet: Was Stephen Middlebrooks' national origin a motivating factor in Teva's decision to terminate him?

This Court repeatedly instructed the jury that it was to decide whether Plaintiff was entitled to damages based on his claims of both discrimination based on age and/or national origin **and** retaliation based on his complaints of age and/or national origin. The verdict sheet did not distinguish between Plaintiff's discrimination and retaliation claims in connection with the **damages** to be awarded. Contrary to Defendant's assertions in its Motion, the verdict sheet properly and correctly suggested to the jury that it should not distinguish between Plaintiff's discrimination and retaliation claims in connection with the damages to be awarded, which makes sense given that Plaintiff was entitled to back pay in connection with both a discrimination claim and also on a retaliation claim[12].

Here, the jury found, *inter alia*, that Plaintiff's complaints of national origin discrimination and age discrimination had a determinative effect on his termination. (Docket No. 137, Nos. 5, 6). The jury concluded that Plaintiff was entitled to lost back pay damages resulting from Defendant's unlawful termination of his employment. By awarding damages to Plaintiff in Question Nos. 13 and 14, the jury was clearly intending to compensate him for his back pay losses resulting from Defendants' unlawful (i.e., retaliatory) conduct, a perfectly rational decision. Defendant is not entitled to a new trial on this issue, and its request should be denied.

---

[12] The Third Circuit Model Jury Instructions for back pay under both Title VII and the ADEA (5.4.3 and 8.4.2., respectively) include that the jury may award damages that the plaintiff would have received from the defendant had the plaintiff not been the subject of the defendant's "intentional discrimination." The Model for both statutes does not provide a separate instruction for discrimination claims, and a separate instruction for retaliation claims. If Defendant's argument here is adopted, then it would result in juries in cases involving both discrimination and retaliation claims having to be charged on damages regarding discrimination claims and then having to be charged separately on damages regarding retaliation claims. (The instructions, of course, would be identical, except for the courts having to say "intentional discrimination" or "intentional retaliation.") This would be a nonsensical result. Clearly, Defendant agrees, as it did not object, either at trial or in its post-trial Motions, to the fact that the questions on compensatory damages and front pay do not distinguish between discrimination and retaliation. (*See* Question Nos. 9; 10; or, 12).

**2.  The verdict sheet questions regarding back pay were clear and the jury's award was consistent with them**

Defendant has waived any argument in connection with its assertion that the verdict sheet questions about back pay "reveal manifest confusion" as it did not raise this issue at any time during trial.  Defendant did not raise any issues at all in connection with Question Nos. 13 and 14 (that it now claims were "inherently confusing") on the verdict sheet during trial.  Even if Defendant had not waived that issue, it lacks a legitimate basis for its current (post-trial) argument.

First, Plaintiff testified that part of his compensation package each year that he was employed at Defendant (until 2015) consisted of an equity award, either stock options or stock grants, and that this award averaged out to $50,000 worth of equity per year. (Ex. "A," 11/14/18 TT 9:17-25; 95:19-23)  Defendant did not offer any evidence whatsoever to challenge that testimony.  Defendant incorrectly asserts that the jury's award of three (3) times his average equity amount ($50,000) "appears to be based on wild speculation or confusion about what it was being asked to calculate."  To the contrary, the jury clearly credited Plaintiff's testimony that he lost out on an average of $50,000 in his equity award per year, from 2015 (the first time that he was denied equity through the present (as Question No. 14 asked), and awarded him $50,000 for each of the three years ($150,000 total) since he did not get the equity award.  The jury concluded, based on the record evidence and its careful consideration of the same, that Plaintiff was entitled to (three (3) years worth of) equity.

Second, Defendant incorrectly suggests that Question No. 14 "improperly asked the jury to award back pay (including salary and benefits during the entire final year of [Plaintiff's] employment." Def.'s Mot. p. 14.  Even if that were a legitimate objection (that Defendant had not waived), there was no resulting harm.  The jury's back pay award of $182,000 (excluding the $150,000 in equity) clearly does not include salary and benefits for the "entire final year" of

10

Plaintiff's employment with Defendant.

The Third Circuit rejected essentially the same argument that Defendant is now making in *Roberts Tech. Grp., Inc. v. Curwood, Inc.*, 695 Fed. Appx. 48 (3d Cir. Jun. 16, 2017). In *Roberts Tech.*, the Third Circuit vacated this Court's order granting a new trial on the issue of damages (finding that the plaintiff had failed to present sufficient evidence as to damages), and remanded for the original verdict in favor of the plaintiff to be reinstated. The Court held that, "While it was [the plaintiff]'s burden to prove damages (citation omitted), once it had done so with reasonable rather than mathematical certainty, it became 'the defendant's obligation to prove that a lesser amount than that claimed by plaintiff would sufficiently compensate for the loss.'" The Court also noted that (as in the present matter) the defendant had the opportunity to conduct cross-examinations "and to identify and expose any flaws in [the plaintiff's] analysis."[13]

### D. Defendant Is Not Entitled To A New Trial On Plaintiff's Emotional Distress Damages; The Jury's $200,000 Award Should Not Be Disturbed

Plaintiff testified in detail in connection with Defendant's unlawful conduct, and his emotional distress resulting from the same. He described the day of his termination:

> They closed the door, and they were very succinct about it. You know, it was a very short conversation that they were there to terminate me. They didn't have any of the standard paperwork with them for me to sign. They collected my – my credit card, my I.D. badge, my computer, my phone, and basically told me that I had one hour to leave the premises, that I should pack up my bags and that a member of the security team would escort me out of the building.

Ex. "A," 11/14/18 TT 106:2-11.

---

[13] Defendant now argues (in FN 15 of its Motion) that Plaintiff "presented no evidence from which the jury could have calculated the amount of equity to which he was entitled." That is not an accurate representation of the record. As set forth above, Plaintiff testified specifically that he received an average of $50,000 in equity (either stock options or stock grants) ever year. What is accurate is that Defendant, despite having full opportunity to cross-examine Plaintiff regarding his equity (and everything else) set forth no evidence whatsoever to rebut Plaintiff's testimony regarding his equity award. Obviously, the jury relied upon Plaintiff's *unrebutted* testimony to calculate his equity. Defendant cannot now legitimately complain about the careful calculations of the jury based on Plaintiff's testimony when it did nothing during the trial to rebut the same.

Plaintiff further testified that he was treated differently than other directors who have been terminated for (actual) performance issues at Defendant:

> A:    So normally the person would be brought up to the Human Resources area outside of the normal work environment. Issues would be discussed. And if the person was being terminated, there would be provisions made where they can come back later after hours to pick up their belongings. They weren't required to carry their belongings out through their organization. They were accommodations that were made for people, performance related, you know, so that it was as – would be a less stressful, you know, situation. So typically it would be done very, very quietly, and people would be given time to collect their items, to say goodbye to their colleagues and move on.

> Q:    And would about in terms of the area where you were sitting? Could other people see what was going on?

> A:    Yes. My entire North Wales team sat outside my office and they saw Nir come into the office with the HR representative. And there are glass partitions in the wall, it's pretty obvious what was going on.

> Q:    How were you feeling at the time?

> A:    Horrible. Just – so yeah. Horrible. Nir and Chris left the office. My team came in. I broke down. They helped me collect my thing and bring them out to the car. It was very difficult.

Ex. "A," 11/14/18 TT 107:2-25.

> Q:    Did you suffer any physical affects [*sic*] from the termination and the unemployment?

> A:    Well, it was very stressful time for me. First time that I had not had a paycheck. And the process of finding a job is like a roller coaster. Some days you are all excited, you find a new job, you put in the paperwork, or you get an interview and it's, you know, great. And the next day you get rejected from ten jobs. It's horrible. So it was a difficult time.

Ex. "A," 11/14/18 TT 109:9-17.

"After getting the news of being terminated, I was pretty devastated. I was upset."
Ex. "A," 11/14/18 TT 97:9-10.

Plaintiff also testified to his emotional distress prior to his termination, when he was being subjected to a retaliatory hostile work environment. He said that his mid-year review (in October

12

2015) "was an extraordinarily difficult meeting for me...The meeting lasted almost six hours. And for a large majority of the meeting, Mr. Aharoni was bringing in issues and facts that were from left field." He went on to describe Mr. Aharoni's demeanor:

> "He was agitated. He was disjointed. He had all kinds of notes and papers, but it didn't seem to be any direction. It was more of a stream of consciousness. Anything that he could think of that he could throw at me, he was throwing at me."

Ex. "A," 11/14/18 TT 62:11-25.

The evidence set forth above completely undermines Defendant's assertion that Plaintiff "presented no evidence of emotional distress."[14]  Defendant's Motion seeking a new trial, or, in the alternative, that this Court strike the jury's $200,000 emotional distress award, completely ignores the record and, as a result, should be denied.

In a recent age discrimination trial in the District of New Jersey, the jury awarded – and the court upheld on post-trial motion – an emotional distress award of $520,000. *See Braden v. Lockheed Martin Corp.*, No. 14-4215, 2017 U.S. Dist. LEXIS 207236, at *55 (D.N.J. Dec. 18, 2017). The *Braden* court upheld the award even though no other witness testified to plaintiff's emotional distress; the plaintiff did not seek medical treatment as a result of the defendant's actions; and, there was no expert report on damages[15]. Similarly, in *Briggs v. Temple Univ.*, 2018 U.S. Dist. LEXIS 177418 (E.D.Pa. Oct. 16, 2018), the court denied the defendant's motion for a new trial or, in the alternative, a remittitur on the jury's $350,000 emotional distress damages award to the plaintiff in emotional distress damages where the only evidence of emotional distress was the plaintiff's own testimony (as well as emails that she had sent regarding the same). The

---

[14] Plaintiff was not the only witness who offered evidence of his emotional distress. One of his direct reports, Troy Gaugler testified that he saw Plaintiff on the day of his termination and that "you could see that he was visibly upset and then I knew what happened, that he was terminated." Ex. "A," 11/14/18 TT 292:16-293:1.

[15] Similar to the present matter, the only evidence of the *Braden* plaintiff's emotional distress was his testimony that, *inter alia*, that, instead of retiring on his own terms, he was taken into an office, handed a form letter, and then escorted out of the premises by security guards; that he felt betrayed, depressed, and shocked by the manner of his termination; and, that he was "frustrated and demoralized" by his failure to obtain a new job.

*Briggs* court concluded that, "In sum, we do not believe medical evidence or corroborating testimony was necessary for Briggs to sustain her award of compensatory damages, and we will deny Temple's motion for judgment as a matter of law on this issue." *See also Moussa v. Pa. Dep't of Pub. Welfare*, 289 F. Supp. 2d 639 (W.D.Pa. Oct. 23, 2003)("neither medical evidence nor corroborating testimony is necessarily required in order to support an award of mental anguish damages" and noting that "intangible injuries" such as "feelings of humiliation and embarrassment are sufficient to support an award of compensatory damages").[16]

E.    **The Jury's Front Pay Award Should Not Be Disturbed**

The jury in this matter awarded $450,000 in response to the question, "From now until a reasonable time in the future, what is the amount equal to any future wages and benefits Mr. Middlebrooks would reasonably have earned from Teva had he not been terminated?" The jury reasonably awarded the same based on Plaintiff's testimony that he had planned to work at Defendant until his retirement in 2025, which would have been his twenty fifth anniversary at the company, and based on Plaintiff's testimony about the differences between his compensation package at his current employer, Jones Lang LaSalle ("JLL") and what he would have been earning had Defendant not retaliated against him by terminating his employment. Ex. "A," 11/14/18 TT 94:15-104:8; 103:8-18.

---

[16] The cases to which Defendant cited in apparent support of its argument regarding the jury's emotional distress damages award to Plaintiff are distinguishable from the present matter. In *Spence v. Board of Education*, 806 F. 2d 1198, 1201 (3d Cir. 1986), a case from over thirty (30) years ago, the Court affirmed the district court's Order that the plaintiff either remit $22,060 of the $25,000 that she was awarded for emotional distress damages or undergo a new trial (on both damages and liability). The *Spence* Court explicitly did ***not*** decide "whether a verdict for emotional distress may ever be supported solely by a plaintiff's own testimony, but, rather, determined only on the facts of that particular case that the district court did not err in finding that the evidence was too speculative to support the award of emotional distress damages. The *Spence* Court also noted that it was undisputed that the plaintiff in that case had not lost her job, or suffered any loss of income (of course, unlike in the present matter). In *Zielinski v. SPS Technologies LLC*, 2011 U.S. Dist. LEXIS 135187 (E.D.Pa. Nov. 22, 2011), the court granted the defendant's motion for a new trial on damages unless the plaintiff accepted a remittitur of his emotional distress damages (from $250,000 to $100,000). The *Zielinski* court specifically noted that it gave the plaintiff ample opportunity to distinguish case law upon which the defendant relied (including the *Spence* case noted here) but that he completely failed to do so.

14

Defendant terminated Plaintiff's employment when he was fifty eight (58) years old; he was sixty one (61) years old as of the time of trial. He testified that he planned to work until he was sixty eight (68) years of age, seven (7) years from the date of the trial; this was consistent with his testimony that his plan while he was still employed at Defendant was to work until 2025, his twenty fifty anniversary with the company (and when he turns sixty eight (68) years old. Ex. "A," 11/14/18 TT 103:8-18).

Plaintiff further testified in detail to the specific differences between the compensation and benefits to which he was entitled at Defendant and his current package at JLL, which includes: (1) a difference in the amount of his bonus (20% at JLL v. 30% at Defendant, a difference of $19,200 at $192,000 base salary, Plaintiff's current JLL base salary and what Plaintiff was earning at Defendant at the time of his termination); (2) a difference in the amount of equity (none at JLL v. approximately $50,000/year at Defendant); (3) a difference in the amount of health insurance deductibles (approximately $10,000 - $15,000 per year more at JLL than at Defendant); and, (4) a difference in the amount of his 401(k) match (3% at JLL (after one (1) of employment v. 10% (based on salary and bonus) at Defendant).[17] Ex. "A," 11/14/18 TT 94:15-104:8.

The jury also heard Plaintiff's specific testimony that he had planned to work at Defendant for another seven (7) years, until 2025, which would have been his twenty-fifth anniversary at Defendant (testimony that was not challenged at all by Defendant, either at trial or on its present Motion). Ex. "A," 11/14/18 TT 103:8-18. *See Anastasio v. Schering Corp.*, 838 F.2d 701, 709 (3d Cir. 1988) (the question of when a plaintiff would have retired is properly left to the finder of fact). The Third Circuit and other district courts in this Circuit have upheld even larger awards reflecting

---

[17] Plaintiff testified that, based on his calculations, his total loss between the time that he was terminated and the time that he planned to work at Defendant until his retirement (at age sixty eight (68), through 2025) was about $1.5 million. Ex. "A," 11/14/18 TT 103:19-104:4.

longer periods of future lost wages. *See also Bianchi v. City of Philadelphia*, 80 Fed.Appx. 232,

237-38 (3d Cir. 2003) (affirming $512,500 front pay award representing 13 years of lost wages);

*Bates v. Bd. of Educ. of Capital Sch. Dist.*, 2000 U.S. Dist. LEXIS 4873, (D. Del. Mar. 31, 2000)

(upholding front pay award for 17 years).

Plaintiff requested front pay in the amount of $504,000, based on the above. Ex. "A,"

11/16/18 TT 129:17-25. The jury awarded him less than what he requested. Moreover, Defendant

did not set forth any evidence rebutting Plaintiff's testimony regarding his front pay, including the

differences between his compensation at the time that he was terminated from Defendant and his

compensation at JLL; indeed, Defendant did not even challenge Plaintiff's testimony regarding his

inferior compensation package at JLL versus that which he was earning at Defendant[18]. Moreover,

this was clearly not an award that was based on vague testimony or pure speculation. *See Roberts*

*Tech. Grp., Inc. v. Curwood, Inc.*, 695 Fed. Appx. 48 (3d Cir. Jun. 16, 2017). As set forth above,

the jury's decision was based on careful consideration of the evidence, including Plaintiff's

detailed testimony about the specific differences between compensation at Defendant and his

compensation at JLL, as set forth above.

### F. **The Jury's Punitive Damages Award Should Be Upheld**[19]

This Court should uphold the $5 million punitive damages award pursuant to the jury's

finding that Defendant subjected Plaintiff to retaliation under the Age Discrimination in

Employment Act ("ADEA").

The ADEA includes that its provisions "shall be enforced in accordance with the powers,

---

[18] Defendant's cross-examination of Plaintiff regarding his economic loss damages essentially consisted of asking him whether he was sure about his testimony that he earned a total compensation package of about $300,000 at Defendant (he was); whether he agreed that aspects of his compensation such as bonuses and equity were discretionary (he did); and, confirming that he was currently worse off in terms of his bonus; his equity; and, his health insurance package. Ex. "A," 11/14/18 TT 268:21-271:17.

[19] Per Fed.R.Civ.P. 54(c), "Every other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."

remedies and procedures" of the Fair Labor Standards Act ("FLSA"). 29 U.S.C. § 626(b).  The

statute further provides that, "liquidated damages shall be payable only in cases of willful

violations of this Act," meaning that the employer "either knew or showed reckless disregard for

whether its conduct was prohibited by the age discrimination law. *Id.*; *Harter v. V. GAF*

*Corporation*, 967 F.2d 846 (3d Cir. 1992)(*citing TransWorld Airlines, Inc. v. Thurston*, 469 U.S.

111 (1985); *Potence v. Hazleton Area School District*, 357 F.3d 366 (3d Cir. 2004).

      In 1977, Congress amended the remedial section of the FLSA (incorporated into the

ADEA) to include that, "Any employer who violates the provisions of section 15(a)(3) of this Act

shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of

section 15(a)(3)[20], including without limitation employment, reinstatement or promotion and the

payment of wages lost and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

      In *Travis v. Gary Community Mental Health Ctr, Inc.*, 921 F. 2d 108, 111 (7th Cir. 1990),

the Seventh Circuit emphasized that, "[t]his amendment [to the FLSA] authorizes 'legal' relief, a

term commonly understood to include compensatory and punitive damages." *Id*. at 841.  The

*Travis* Court upheld the jury award to the plaintiff under the (amended) FLSA:

> Appropriate legal relief includes damages.  Congress could limit these damages,
> but the 1977 amendment does away with the old limitations without establishing
> new ones.  Compensation for emotional distress, and punitive damages, are
> appropriate for intentional torts such as retaliatory discharge.  So although § 1985
> (2) does not support the jury's award, § 216(b) does. Fed.R.Civ.P. 54(c) requires
> courts to award the relief to which the prevailing party is entitled, even if that party
> did not request the relief or relied on the wrong statute.  Misplaced reliance on §
> 1985(2) does not undercut the verdict; § 216(b) supplies all the authority the district
> court required.

*Id*. at 112.

*See also Shea v. Galaxie Lumber & Constr. Co., Ltd.*, 152 F.3d 729, 736 (7th Cir. 1998)(holding

that punitive damages may be awarded on an FLSA retaliation claim); *Moore v. Freeman*, 355

---

[20] 29 U.S.C. § 215(a)(3) is the anti-retaliation provision of the FLSA.

F.3d 558 (6th Cir. Oct. 21, 2003)("a plain reading of the text of the provision indicates that it does not limit the type of damages that are available"); *Moskowitz v. Trustees of Purdue Univ.*, 5 F. 3d 279 (7th Cir. 1993)[21]. *See also Marrow v. Allstate Sec. & Investigative Servs.*, 167 F. Supp. 2d 838 (E.D.Pa. 2001)(holding that punitive damages are available on an FLSA retaliation claim); *Jones v. Amerihealth Caritas*, 95 F. Supp. 3d 807 (E.D.Pa. 2015)(denying the defendant's motion to strike punitive and compensatory damages for an FLSA retaliation claim).

The EEOC has also weighed in on this issue:

> Compensatory and punitive damages are available for retaliation claims brought under the ADEA and the EPA, even though such relief is not available for non-retaliation claims under those statutes. Any compensatory and punitive damages obtained under the EPA and the ADEA are not subject to statutory caps.

EEOC Directive No. 915.004, EEOC Enforcement Guidance on Retaliation and Related Issues, at FN 186 (Aug. 25, 2016). ("The FLSA, as amended in 1977, 29 U.S.C. § 216(b), authorizes compensatory and punitive damages for retaliation claims under both the EPA and the ADEA. *See Moore v. Freeman*, 355 F.3d 558, 563-64 (6th Cir. 2004); *Moskowitz v. Trs. of Purdue Univ.*, 5 F.3d 279, 283-84 (7th Cir. 1993))".

This Court should follow the EEOC's guidance that a plaintiff bringing an ADEA retaliation claim is entitled to punitive (and compensatory) damages, and, as a result, the jury award in this case is upheld (and is not subject to the Title VII caps[22]).

---

[21] *Contra Snapp v. Unlimited Concepts, Inc.*, 208 F. 3d 928 (11th Cir. 2000).

[22] To the extent that this Court disagrees that the jury's award of $5 million in punitive damages should stand pursuant to Plaintiff's ADEA retaliation claims, and holds that the $300,000 cap pursuant to 42 U.S.C. § 1981a(b)(3)(d) applies, that amount is separate from the jury's $200,000 emotional distress award to Plaintiff. While Title VII does cap the amount of compensatory and punitive damages a plaintiff is allowed to recover, here Plaintiff also brought claims pursuant to the Pennsylvania Human Relations Act, which has no cap on compensatory damages. *See Gagliardo v. Connaught Labs.*, 311 F.3d 565 (3d Cir. 2002)(reducing the punitive damages award to $300,000 but upholding the $2 million compensatory damages award because the federal law "does not prevent a claimant from recovering greater damages under a state law claim that is virtually identical to a capped federal claim." *Id.* at 570; *see also* 42 U.S.C. § 2000e-7 (Title VII's prohibition against limiting state law remedies); *Tamburo v. Ross/West View Emergency Med. Servs. Auth.*, No. 04-1237, 2007 U.S. Dist. LEXIS 29355, at *4 (W.D. Pa. Apr. 20, 2007) (upholding the compensatory damages award under the PHRA and explaining, "The Court [in *Gagliardo*] reasoned that the absence of a damages cap in the PHRA indicates that it was intended to provide a remedy beyond its federal counterpart and that imposing the cap would frustrate the statutory proclamation regarding a state's ability to provide for a greater recovery.") As such, and only if the Court determines that the jury's award of $5 million in punitive damages should not be upheld, Plaintiff is entitled to his full emotional distress award of $200,000 and $300,000 in punitive damages pursuant to Title VII.

The fact that the standard for the award of liquidated damages differs between the FLSA and the ADEA should not preclude a finding that plaintiffs are entitled to punitive (and compensatory) damages in ADEA retaliation claims. *See, e.g., Jones*, 95 F. Supp. 3d at 818; *Marrow*, 167 F. Supp. 2d at 845.  Both statutes provide for liquidated damages.  While the FLSA allows for liquidated damages without a showing of a willful violation, the ADEA, as noted above, requires a showing that the employer either knew or showed reckless disregard for whether its conduct was prohibited by the age discrimination law. *Marrow*, 167 F. Supp. 2d at 845.  The ADEA, as noted above,

All that distinction means is that there is a heightened standard for a plaintiff in an ADEA retaliation case to get an award of punitive (and compensatory) damages under that statute, just as there is a heightened standard for a plaintiff to be entitled to liquidated damages under the statute.  In other words, in an FLSA retaliation case, a plaintiff is entitled to punitive (and compensatory) damages upon a showing that the employer retaliated against him.  In an ADEA retaliation case, a plaintiff is entitled to punitive (and compensatory) damages upon a showing of a willful violation of the statute, i.e., that the employer either knew or showed reckless disregard for whether its conduct was prohibited by the age discrimination law.  Here, Plaintiff has already met that heightened standard; the jury awarded him liquidated damages. (*See* Question No. 19 of the Verdict Form).  As such, Plaintiff is entitled to punitive (and compensatory) damages based on the jury's finding that Defendant retaliated against him based on his complaints of age discrimination.[23]

In ADEA discrimination cases, as noted above, there may be circumstances in which the

---

[23] When Congress amended the FLSA in 1977, as referenced above, it could have capped the punitive and compensatory damages permitted under the statute, as it did for Title VII. *See* 42 U.S.C. § 1981a(b)(3).  It did not do so.

19

employer did not engage in conduct that warrants the imposition of liquidated damages; in other words, there may be age discrimination cases in which the employer's conduct was benign. That will *never* be the case with an ADEA retaliation case; in those circumstances, the employer has engaged in conduct that was designed to chill the employee's rights under the statute, to discourage employees from bringing forward complaints of discrimination. As a matter of public policy, employers who engage in such conduct should be subject to punitive damages so that employees are not discouraged from coming forward with complaints and to ensure that employers do not retaliate against those employees. "Deterrence, of course, is the special talent of punitive damages." *Marrow*, 167 F. Supp. 2d 843. The jury here reached the conclusion that Defendant should be subject to $5 million in punitive damages; as such, that award should be upheld[24].

## IV.   **CONCLUSION**

For the foregoing reasons, the unanimous jury verdict in this case should stand. Defendant's Motion seeking a new trial should be denied in its entirety. As such, Plaintiff respectfully requests that this Court enter the proposed Order submitted herewith.

<div style="margin-left:40%">

Respectfully submitted,

CONSOLE MATTIACCI LAW

BY:   /s/ Caren N. Gurmankin
Laura C. Mattiacci, Esq.
Caren N. Gurmankin, Esq.
1525 Locust St. 9th Floor
Philadelphia, PA 19102
(215) 545-7676
Attorneys for Plaintiff, Stephen Middlebrooks

</div>

Dated:  January 4, 2019

---

[24] The question regarding punitive damages on the verdict sheet in this case did not specify whether it applied to the national origin discrimination claims (or retaliation based upon the same) or the age retaliation claims.